2010 ME 67

**STATE of Maine**

v.

**Reno METZGER.**

Supreme Judicial Court of Maine.

Argued: May 19, 2010.

Decided: July 20, 2010.

---

Timothy E. Zerillo, Esq. (orally), Zerillo Law, LLC, Portland, ME, for Reno Metzger.

Neal T. Adams, District Attorney, Todd R. Collins, Asst. Dist. Atty. (orally), Caribou, ME, for the State of Maine.

Panel: SAUFLEY, C.J., and LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

MEAD, J.

[¶ 1] Reno Metzger appeals from a judgment of conviction entered by the District Court (Caribou, *O'Mara, J.*) on one count of domestic violence assault (Class D), 17–A M.R.S. § 207–A(1)(A) (2009), and one count of domestic violence reckless conduct (Class D), 17–A M.R.S. § 211–A(1)(A) (2009).[1] Metzger contends that because the victim did not testify at his trial, the court erred in allowing a police officer to testify that she identified him as her attacker at the scene of the crime. Metzger argues that the officer's testimony was inadmissible because (1) it was hearsay not subject to any exception, and (2) its admission violated his Confrontation Clause rights under the United States and Maine Constitutions. Although we are unpersuaded by that challenge, because the evidence admitted at trial was insufficient to support a finding beyond a reasonable doubt that Metzger and the victim were "family or household members," we vacate the judgment and remand for entry of a judgment of conviction on lesser included offenses, and for resentencing.

## I. BACKGROUND

[¶ 2] The record, when viewed in the light most favorable to the State, supports the following facts. *See State v. Townsend,* 2009 ME 106, ¶ 10, 982 A.2d 345, 346–47. On July 30, 2008, at about 1:00 a.m., Officer Douglas Bell of the Caribou Police Department was at the dispatch center when another officer took a call and started writing down its details. As soon as Bell saw the officer write down the name of the Par & Grill, a restaurant and bar located approximately nine-tenths of a mile from the station, he went to that location, arriving less than ninety seconds later. When he arrived, Bell saw vehicles in the parking lot and some people standing in the foyer; he then went inside. He found the victim sitting on the floor "crying hard, breathing rapidly, [and] look[ing] ... scared." The victim was "covered with blood," including on her face, hands, and sweatshirt, the right side of her head was swollen, and there was an apparent cut over her left eye.

[¶ 3] Less than one minute after seeing the victim, only two and one-half minutes after getting the initial call, Bell asked her two questions that are central to this appeal. He first asked, "What happened?" He then asked her whether she was hurt and, "Who did it?" The victim told Bell that her boyfriend, Reno Metzger, had kicked her in the stomach and hit her repeatedly. She told Bell that Metzger was wearing a red shirt and blue jeans,

1. The statutes provide:
**§ 207–A. Domestic violence assault**
1. A person is guilty of domestic violence assault if:
**A.** The person violates [17–A M.R.S.] section 207 and the victim is a family or household member as defined in [19–A M.R.S. § 4002(4)]. Violation of this paragraph is a Class D crime.
**§ 211–A. Domestic violence reckless conduct**

1. A person is guilty of domestic violence reckless conduct if:
**A.** The person violates [17–A M.R.S.] section 211 and the victim is a family or household member as defined in [19–A M.R.S. § 4002(4)]. Violation of this paragraph is a Class D crime.
17–A M.R.S. §§ 207–A(1)(A), 211–A(1)(A) (2009).

that he did not have any weapons, and that he might be "[o]ver by the truck."

[¶ 4] Bell called for an ambulance and then left to locate Metzger. He found Metzger, who was "very drunk" and "very distraught," walking toward him from a truck; he was bleeding from the nose and had blood on his face and hands. Metzger asked Bell how the victim was. Bell arrested Metzger some four to five minutes after first seeing the victim on the floor of the bar, some six to seven minutes after first getting the call at the station.

[¶ 5] Metzger was charged by complaint with domestic violence assault and domestic violence reckless conduct; he pleaded not guilty and retained counsel. His motion to suppress statements that he made to police at the stationhouse was granted. Anticipating that the victim would not attend the trial, Metzger filed a motion in limine seeking to bar the admission of her statements to Officer Bell identifying him as her assailant on the grounds that they were hearsay and that their admission would violate his Confrontation Clause rights. The court conditionally admitted Bell's testimony concerning the victim's statements in a bench trial at which Bell was the only witness. At the trial's conclusion, the court took the motion in limine and its verdict under advisement.

[¶ 6] At a subsequent sentencing hearing, the court made findings of fact. It then concluded that the victim's statements were admissible hearsay because they qualified as excited utterances, *see* M.R. Evid. 803(2), and that their admission did not violate the Confrontation Clause because they were nontestimonial, *see* *Davis v. Washington*, 547 U.S. 813, 821, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) (stating that only testimonial statements implicate the Confrontation Clause). The court found Metzger guilty beyond a reasonable doubt on both counts, entered judgment, and sentenced Metzger on the

domestic violence assault count to eight months' incarceration with all but four months suspended, two years of probation including a requirement that Metzger complete a certified batterer's intervention program, a $500 fine, and a $1000 jail fee; on the domestic violence reckless conduct count, the court imposed a sentence of four months concurrent incarceration. This appeal followed.

## II. DISCUSSION

### A. Admissibility of the Victim's Statements

[¶ 7] Metzger contends that Bell's testimony putting in evidence the victim's answers to his two primary questions— "What happened?" and "Who did it?"—was inadmissible as both a violation of M.R. Evid. 802, which provides that hearsay is not admissible unless subject to an exception, and a violation of his constitutional right to confront the witnesses against him, *see* U.S. Const. amend. VI; Me. Const. art. I, § 6. Whether Bell's testimony was properly admitted is the central issue in this case because his report of the victim's answers, namely that she was beaten and that Metzger did it, is the indispensable evidence against Metzger.

[¶ 8] In *Crawford v. Washington,* the Supreme Court made it clear that evidence that would otherwise be admissible under an exception to the hearsay rule may be barred by the Confrontation Clause. 541 U.S. 36, 61, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); *see State v. Tayman,* 2008 ME 177, ¶¶ 10–11, 960 A.2d 1151, 1155; *State v. Mangos,* 2008 ME 150, ¶ 12, 957 A.2d 89, 93 ("A criminal defendant's confrontation right often arises when an out-of-court statement is admitted pursuant to a hearsay exception.") Accordingly, Metzger's challenge requires us to make two separate inquiries: (1) whether Bell's testimony concerning the victim's statements,

which was certainly hearsay,[2] was, as the State asserts, admissible under the excited utterance exception to the hearsay rule; and (2) if the testimony was admissible as an excited utterance, whether the Confrontation Clause nonetheless required its exclusion. *See Tayman,* 2008 ME 177, ¶ 12, 960 A.2d at 1155.

### 1. Excited Utterance

■ [¶ 9] The District Court found that although Bell's testimony concerning the victim's statements was hearsay, it was nonetheless admissible pursuant to the excited utterance exception to the hearsay rule. The court's ruling will be upheld unless it is clearly erroneous. *State v. Watts,* 2007 ME 153, ¶ 5, 938 A.2d 21, 23.

■ [¶ 10] A hearsay statement qualifies as an excited utterance if "(1) a startling event occurred; (2) the hearsay statement related to the startling event; and (3) the hearsay statement was made while the declarant was under the stress of excitement caused by that event." *Id.;* see M.R. Evid. 803(2). In deciding whether the test has been met, a court must consider a variety of factors, including

> the nature of the startling or stressful event, the amount of time that passed between the startling event and the statement, the declarant's opportunity or capacity for reflection or fabrication during that time, the nature of the statement itself, and the declarant's physical and emotional condition at the time of the statement.

*Id.* ¶ 6, 938 A.2d at 23 (citation omitted).

■ [¶ 11] We have said that "[t]here is no bright line time limit to use in deciding when the stress of excitement caused by a startling event has dissipated," *id.*

(quotation marks omitted), and have held that a declarant could still be under the stress of excitement caused by an assault twelve minutes later, *see State v. Robinson,* 2001 ME 83, ¶ 14, 773 A.2d 445, 450. Here, the trial court found that the victim made the statements at issue less than three minutes after the call for help was received by Caribou police. When she made the statements, she was "on the floor [and] in pain," "bleeding, cut, crying, breathing quickly and [she] appeared scared and stressed." The court found that "[the victim] was under the stress of the assault and was not fabricating details."

[¶ 12] The facts found by the court are similar to those that we analyzed in *State v. Ahmed,* where we held that "[i]t was not error, let alone obvious error" for the trial court to admit as excited utterances statements made by a still-crying victim seven minutes after she called 911. 2006 ME 133, ¶ 15, 909 A.2d 1011, 1017. The result here is the same: on these facts the District Court did not clearly err in finding that the victim's statements qualified as excited utterances.

### 2. Confrontation Clause

■■ [¶ 13] As noted above, however, concluding that Bell's testimony was admissible under a hearsay exception was only the first part of the trial court's inquiry, and of ours. The court was then required to determine whether the hearsay statements were testimonial, and thus barred by the Confrontation Clause, before admitting them in evidence. *See Tayman,* 2008 ME 177, ¶ 12, 960 A.2d at 1155. The court's legal conclusion that the statements were nontestimonial, and thus ulti-

---

**2.** Hearsay is "a statement, other than one made by the declarant while testifying at the trial ... offered in evidence to prove the truth of the matter asserted." M.R. Evid. 801(c). Bell's testimony was hearsay because in it he repeated statements made by the victim that the State asked the fact-finder to accept as true—the victim was beaten and Metzger did it.

mately admissible, is reviewed de novo. *State v. Rickett,* 2009 ME 22, ¶ 9, 967 A.2d 671, 674.

[¶ 14] In *Davis v. Washington,* the Supreme Court reiterated its earlier holding in the seminal case of *Crawford v. Washington:*

> The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." In *Crawford* ..., we held that this provision bars admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination. A critical portion of this holding ... is the phrase "testimonial statements." Only statements of this sort cause the declarant to be a "witness" within the meaning of the Confrontation Clause. It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.

547 U.S. at 821, 126 S.Ct. 2266 (citation omitted) (quotation marks omitted); *see Rickett,* 2009 ME 22, ¶ 11, 967 A.2d at 675 ("Nontestimonial statements are not subject to Confrontation Clause restrictions.").

[¶ 15] The *Davis* Court explained the distinction between nontestimonial statements that are not subject to exclusion by the Confrontation Clause and testimonial statements that are:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis,* 547 U.S. at 822, 126 S.Ct. 2266.[3]

[¶ 16] In applying this test, we have said that statements made during a 911 call are made for the purpose of enabling police assistance to meet an ongoing emergency, and thus are nontestimonial, when:

> (1) the caller is speaking about events as they are actually happening; (2) it would be clear to a reasonable listener that the victim is facing an ongoing emergency; (3) the nature of the questions asked and answered are objectively necessary and elicited for the purpose of resolving the present emergency; and (4) the victim's demeanor on the phone and circumstances at the time of the call evidence an ongoing emergency.

*Rickett,* 2009 ME 22, ¶ 12, 967 A.2d at 675 (citing *Davis,* 547 U.S. at 827, 126 S.Ct. 2266).

■ [¶ 17] The same test is applicable here, where the victim's statements to Officer Bell were made during her first interaction with police less than three minutes after the 911 call was placed. Regarding the first factor, the victim spoke to Bell about events that were still happening, as evidenced by her untreated injuries, the ongoing stress of excitement caused by the assault, and the fact that her assailant remained at large.

[¶ 18] Examining the second and fourth factors, it was reasonable for Bell to

---

**3.** We have accepted the testimonial versus nontestimonial distinction in interpreting article I, section 6 of the Maine Constitution, which provides that, "In all criminal prosecutions, the accused shall have a right ... [t]o be confronted by the witnesses against the accused." Me. Const. art. I, § 6; *see State v. Rickett,* 2009 ME 22, ¶ 1 n. 2, 967 A.2d 671, 672.

conclude upon his arrival that the victim was facing an ongoing emergency, as she was on the floor having just been beaten by an assailant who might still be nearby within range of another attack on the victim or himself. The victim's demeanor, described by Bell as crying and still scared, further evidenced an ongoing situation as opposed to one that had been resolved.

[¶ 19] Contrary to Metzger's suggestion, the "ongoing emergency" in this case was not limited to the victim's medical condition and did not automatically end when Bell called for an ambulance.[4] An ongoing emergency may include situations, like the one encountered by Bell here, where the officer has been unable to identify the suspect and satisfy himself that no one is in further danger. The Supreme Court said as much in *Davis:*

> We have already observed of domestic disputes that officers called to investigate ... need to know whom they are dealing with in order to assess the situation, the threat to their own safety, and possible danger to the potential victim. Such exigencies may *often* mean that initial inquiries produce nontestimonial statements.

547 U.S. at 832, 126 S.Ct. 2266 (alteration removed) (quotation marks omitted).

[¶ 20] Finally, as in *Rickett,* "the questions asked and answered were of the type that would allow the officers who were called to investigate to assess the situation, the threat to their own safety, and the possible danger to [the victim]." 2009 ME 22, ¶ 14, 967 A.2d at 675. Within one minute of first seeing the victim, Bell asked for the minimum information that he needed in order to address the emergency he faced, namely what had happened and who he was looking for in order to gain control of the situation. We held in *Rickett* that the answers to those questions, when elicited for the purpose of allowing police to meet an ongoing emergency, were non-testimonial.[5] *See id.* ¶¶ 14–15, 967 A.2d at 675.

[¶ 21] Viewed objectively, the primary purpose of Bell's questions to the victim was to enable police assistance to meet an ongoing emergency. Accordingly, the victim's answers constituted nontestimonial evidence, and the Confrontation Clause did not bar Bell's recital of those answers at trial.

[¶ 22] That is not to say, however, that in all cases where an officer asks a distraught victim "What happened?" or "Who did it?" the answers will always be admissible. Analyzing the two evidentiary considerations we have discussed here—whether a hearsay statement qualifies for admission under an exception to the hearsay rule, and then whether it is testimonial and thus barred by the Confrontation

---

**4.** In any event, the trial court found that Officer Bell radioed for an ambulance after asking the victim what had happened and who had assaulted her, but before locating Metzger.

**5.** The Supreme Court found very similar questions and answers to be nontestimonial in Davis, where a 911 operator asked the victim, "What's going on?" and then asked for the assailant's name. *Davis v. Washington,* 547 U.S. 813, 817, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). The Court said that

at least the initial interrogation conducted in connection with a 911 call, is ordinarily not designed primarily to establish or prove some past fact, but to describe current circumstances requiring police assistance.... [T]he elicited statements were necessary to be able to *resolve* the present emergency, rather than simply to learn ... what had happened in the past. That is true even of the operator's effort to establish the identity of the assailant....

*Id.* at 827, 126 S.Ct. 2266 (alterations removed) (quotation marks omitted).

Clause—is necessarily a fact-specific inquiry. The burden remains with the State in each case to show that under the facts of that case the statement at issue was elicited primarily for the purpose of resolving an ongoing emergency, not to establish or prove past events. The State met that burden here.[6]

## B. Metzger's Sentence

[¶ 23] Viewing the evidence in the light most favorable to the State, *see Townsend,* 2009 ME 106; ¶ 10, 982 A.2d at 346–47, the record fully supports convictions for assault and reckless conduct. *See* 17–A M.R.S. §§ 207(1)(A), 211(1) (2009). Those crimes are lesser included offenses of the crimes charged in the complaint, namely domestic violence assault and domestic violence reckless conduct.[7] 17–A M.R.S. §§ 207–A(1)(A), 211–A(1)(A).

[¶ 24] Domestic violence assault and domestic violence reckless conduct each include an additional element that the less-

er included offenses of assault and reckless conduct do not, that being a requirement that the State prove that "the victim is a family or household member as defined in Title 19–A, section 4002, subsection 4." 17–A M.R.S. §§ 207–A(1)(A), 211–A(1)(A). Proof of this additional element allows the trial court to include as part of the sentence for domestic violence assault two years of probation with a requirement that the defendant complete a certified batterer's intervention program. 17–A M.R.S. §§ 1201(1)(A–1)(2) (2009), 1202(1–B) (2008).[8] Ordinarily, absent the "family or household member" element, probation may not be imposed as part of the sentence on a conviction for simple assault.[9] 17–A M.R.S. § 1201(1)(A–1) (2009).

■ [¶ 25] "All elements of a crime, and all facts that may enhance ... a period of probation, must be proved beyond a reasonable doubt." *State v. Nugent,* 2007 ME 44, ¶ 6, 917 A.2d 127, 129. A "family or household member" is defined as

6. The State also argues that the victim's statements were not barred by the Confrontation Clause because Metzger procured her absence from trial. *See Davis,* 547 U.S. at 833, 126 S.Ct. 2266 ("one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation"). Because we conclude that the statements were nontestimonial and thus did not offend the Confrontation Clause, we do not reach this issue.

7. A lesser included offense is "an offense carrying a lesser penalty which ... [a]s legally defined, must necessarily be committed when the offense ... actually charged, as legally defined, is committed." 17–A M.R.S. § 13–A(2) (2009). This situation presents classic examples of lesser included offenses, because in order to commit domestic violence assault, one must first "violate[ ] [17–A M.R.S.] section 207," 17–A M.R.S. § 207–A(1)(A); likewise, in order to commit domestic violence reckless conduct one must first "violate[ ] [17–A M.R.S.] section 211," 17–A M.R.S. § 211–A(1)(A). Thus assault must necessarily be committed if domestic violence assault is committed because the first is an element of

the second, and reckless conduct is necessarily committed if domestic violence reckless conduct is committed for the same reason. Domestic violence assault and domestic violence reckless conduct carry greater penalties than the unenhanced versions of those offenses because of the possibility of probation in addition to other potential penalties for the commission of a Class D crime. 17–A M.R.S. § 1201(1)(A–1)(2) (2009).

8. Title 17–A M.R.S. § 1202(1–B) has since been amended, though that amendment is not relevant in the present case. P.L. 2009, ch. 142, § 6 (effective September 12, 2009) (codified at 17–A M.R.S. § 1202(1–B) (2009)).

9. If the State pleads and proves that an assault was committed against a "dating partner," defined as an "individual[ ] currently or formerly involved in dating [the defendant], whether or not the individuals are or were sexual partners," 19–A M.R.S. § 4002(3–A) (2009), then not more than one year of probation may be imposed. 17–A M.R.S. §§ 1201(1)(A–1)(2), 1202(1) (2009).

spouses or domestic partners or former spouses or former domestic partners, individuals presently or formerly living together as spouses, natural parents of the same child, adult household members related by consanguinity or affinity or minor children of a household member when the defendant is an adult household member and, for the purposes of this chapter and Title 17–A, sections 15, 207–A, 209–A, 210–B, 210–C, 211–A, 1201, 1202 and 1253 only, includes individuals presently or formerly living together and individuals who are or were sexual partners. Holding oneself out to be a spouse is not necessary to constitute "living as spouses." For purposes of this subsection, "domestic partners" means 2 unmarried adults who are domiciled together under long-term arrangements that evidence a commitment to remain responsible indefinitely for each other's welfare.

19–A M.R.S. § 4002(4) (2009).

 [¶ 26] Here Officer Bell, who was the only witness at the trial, testified that the victim referred to Metzger as her "boyfriend." In its factual findings, the trial court found that, "Officer Bell had not previously known [the victim]. Officer Bell asked [the victim] who did this to her and she responded that her boyfriend, Reno Metzger, had hit her repeatedly." There are several references in the record to Metzger being the victim's "boyfriend," but nothing that would establish that they had been spouses or domestic partners, had a child together, had lived together, or had been sexual partners. Consequently, there is no evidence that Metzger and the victim were family or household members as defined by 19–A M.R.S. § 4002(4).

[¶ 27] In this case, the proof beyond a reasonable doubt standard "demands case-specific evidence of a sexual relationship or some other indicia of family or household member status, as defined in section 4002(4)." *Nugent,* 2007 ME 44, ¶ 15, 917 A.2d at 131. In *Nugent,* we held that evidence of a "boyfriend/girlfriend" relationship, without more, did not satisfy the statutory requirement. *Id.* ¶¶ 14–15, 917 A.2d at 131. Accordingly, even when the evidence is viewed in the light most favorable to the State, on this record the trial court could not rationally find that the "family or household member" element of the offenses charged was proved beyond a reasonable doubt. *See id.* ¶ 16, 917 A.2d at 131. Although Metzger did not raise this issue in the trial court or on appeal, we will correct obvious errors affecting substantial rights. M.R.Crim. P. 52(b).

[¶ 28] Because there is sufficient evidence to support convictions on the lesser included crimes of assault and reckless conduct, we vacate the judgment and remand for the entry of a judgment of conviction of those offenses. Metzger must then be resentenced within the statutory parameters for those convictions.

The entry is:

Judgment vacated. Remanded for entry of a judgment of conviction of assault (Class D), 17–A M.R.S. § 207(1)(A), and reckless conduct (Class D), 17–A M.R.S. § 211(1), and for resentencing.