GERSTEN, J.
(dissenting).
I respectfully dissent from the denial of rehearing en banc. This matter is one in which the majority has perhaps overlooked or misapplied the tenets that the United States Supreme Court stated in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and Davis v. Washington, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) (“Davis & Hammon ”).
Judge Shepherd wrote a compelling dissent to the majority’s P.C.A. with a citation to United States v. Proctor, 505 F.3d 366 (5th Cir.2007). Although I am unable to write a better response to the majority’s P.C.A. than Judge Shepherd’s dissent,[1] the bottom line, as Judge Shepherd convincingly wrote, is that there was no ongoing emergency in this case.
I admit, prior to Crawford, the majority would have properly applied the law in effect since Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). However, Justice Scalia writing for the majority in Crawford, essentially receded from Roberts and reaffirmed the rather plain wording of the United States Constitution’s Sixth Amendment Confrontation Clause. The Confrontation Clause states, “[i]n all criminal prosecutions the accused shall enjoy the right ... to be confronted with witnesses against him.” Crawford, a 9-0 opinion, clearly stated that “testimonial hearsay” was the principal, if not the only, object of concern of the Confrontation Clause. 541 U.S. at 53, 124 S.Ct. 1354.
A criminal defendant has the right to confront witnesses testifying against him or her. Implicit and explicit in that right, a defendant has the right to: 1) be present at his or her trial; 2) confront witnesses against him or her; and 3) cross-examine any witness. Any limitation on these rights raises a claim of a Confrontation Clause violation.
Turning to this case, there are two questions: First, the question is whether the 911 statements are hearsay. Second, if so, are the statements testimonial? If the statements are testimonial, then the Con *477 frontation Clause applies, and the statements should not have been admitted.
At trial, the 911 call was introduced to establish that the defendant was armed. Because the jury believed the defendant was armed, the defendant’s sentence was enhanced. Thus, the call was truly “asserted for the truth of the matter,” resulting in the truth of a life sentence for the defendant. § 90.801(l)(c), Fla. Stat. (2004). Even the majority does not dispute that a 911 call is hearsay. Therefore, since the statements were hearsay, the next question is whether the statements were testimonial.
The testimonial nature of the statements, in my opinion, is also clear. Under Crawford, testimonial statements are not admissible unless: 1) the declarant is unavailable at trial (declarant here was not available); 2) the prosecution demonstrates that the declarant is unavailable (prosecution so proved); and 3) the defendant had a “prior opportunity to cross-examine” the unavailable witness (this did not occur). 541 U.S. at 36, 124 S.Ct. 1354. Crawford considers statements made to police or other governmental agencies to be testimonial. 541 U.S. at 52, 124 S.Ct. 1354. Thus, the 911 call was a testimonial statement that was used against the defendant in this case.
After Crawford, the Court decided the dual cases of Davis & Hammon. These cases dealt with the admissibility of 911 calls and the meaning of interrogation. The Court stated, “[W]e use [the term interrogation] in its colloquial, rather than any technical legal, sense ... and we need not select among [the various definitions] in this case.” 547 U.S. at 822, 126 S.Ct. 2266.
Davis & Hammon introduced the judicial primary purpose test. Under the primary purpose test, statements are non-testimonial when made under circumstances objectively indicating that the primary purpose of the interrogation is to enable police to meet an ongoing emergency. The Court determined that the statement becomes “testimonial” when the circumstances objectively indicate that there is no ongoing emergency, and the primary purpose is to establish or prove past events relevant to later criminal prosecution. 547 U.S. at 822, 126 S.Ct. 2266.
Davis & Hammon stand for the proposition that a non-testimonial statement can “evolve into a testimonial statement” once the emergency has been resolved. 547 U.S. at 828, 126 S.Ct. 2266. In Davis, once the operator gained the information necessary to assess the exigency, the emergency ended. In Davis, the defendant drove away, but the operator continued the questioning. The Court held that the remaining information was testimonial. 547 U.S. at 813, 126 S.Ct. 2266.
Courts have given varied interpretations to the ongoing emergency language in Davis & Hammon. See, e.g., Colon v. Taskey, No. 1:08-CV-199, 2009 WL 1616110 (N.D.Ohio 2009); James v. Marshall, No. CV 06-3399-CAS(E), 2008 WL 4601238 (C.D.Cal.2008); State v. Lewis, 361 N.C. 541, 648 S.E.2d 824 (2007); Lee v. Cain, No. 06-9669, 2007 WL 2751210 (E.D.La.2007); State v. Basil, 2009 WL 1174777 (N.J.2010); State v. Lucas, 407 Md. 307, 965 A.2d 75 (Md.2009); Sanon v. State, 978 So.2d 275 (Fla. 4th DCA 2008). But see, e.g., U.S. v. Proctor, 505 F.3d 366 (5th Cir.2007); State v. Metzger, 999 A.2d 947 (Me.2010); Hester v. State, 283 Ga. 367, 659 S.E.2d 600 (2008).
Turning again to this case, the lightning rod question is whether there was an ongoing emergency. The 911 call was as follows:
[911 Operator]: Hello can I help you?
[Victim]: Yeah, I ... got an emergency.
*478 [911 Operator]: What’s your emergency?
[Victim]: It’s just armed robbery.
[911 Operator]: Okay. When did this occur? What city?
[Victim]: What street is this?
[Unidentified Speaker]: It[’]s Third, 49th and Third.
[Victim]: 43rd and 11th Court.
[[Image here]]
[911 Operator]: North — 42 Northwest?
[Victim]: Yes[,] by the park.
[911 Operator]: Okay. Do you need anyone? Are you injured?
[[Image here]]
[Victim]: No.
[911 Operator]: Okay. Thank you. What is your name?
[Victim]: Leon Valentine.
[911 Operator]: Okay. What’s your phone number?
[Victim]: It’s in my phone, so I’m using somebody else[’]s phone.
[911 Operator]: Okay. Leon[,] how many people?
[Victim]: I don’t know. There was some people at the park that -witnessed it. They just talking to me now. [sic]
[911 Operator]: Okay. Tell me what happened.
[Victim]: I ... am a Real Estate Broker. I pulled over to the side. I was using my phone. And these guys, they pulled up, like they were asking for directions. One of them, the guy, another guy with ... a gun, they took off with my car [keys].
[911 Operator]: Okay. Were these black males?
[Victim]: yes, these black males in a white Sentra. It doesn’t, without a tag. [sic]
[911 Operator]: White what kind of.
[Victim]: In a white Sentra.
[[Image here]]
[Victim]: They were asking for directions, the guy with — the one another guy with a gun, they took all my stuff.
[911 Operator]: Okay. Were these black males?
[Victim]: yes. 3 black males, white Sen-tra. And it doesn’t [have] a tag.
[Unidentified Speaker]: Orange man got in the back seat.
[[Image here]]
[Unidentified Speaker]: Orange Man, that’s all I know, they call him Orange Man.
[[Image here]]
[911 Operator]: Do you know what he was wearing?
[Victim]: No gold teeth and on the bottom. I don’t remember what, I think one of them had a red shirt.
[911 Operator]: Okay. The one that had the gun, what was he wearing?
[Victim]: Two of them had guns.
[911 Operator]: Okay.
[Victim]: That’s right. They took my hat, my Panama Hat.
[911 Operator]: It was a Panama Hat?
[Victim]: They took my tennis racquet, all man, they left -with all my tennis, [sic]
[Unidentified Speaker]: They have your keys.
[911 Operator]: What else?
[Victim]: He damn sure took everything.
[911 Operator]: Okay. Thank you are at the park now there? [sic]
[Victim]: They took my car keys so I can’t even move.
*479 [Unidentified Speaker]: They coming back for the car.
[Victim]: They took my walletf.]
[[Image here]]
[Unidentified Speaker]: They got your address. Your keys, your house keys.
[[Image here]]
[911 Operator]: We will be there as soon as possible. All right thank you.
Here, the honest reader has to question whether there was an ongoing emergency when the victim made the 911 call. The declarant stated that he did not need anyone and that he was not injured. Once that was established, the 911 operator then gathered information that would be used to, “establish or prove past events relevant to later criminal prosecution.” Davis, 547 U.S. at 813, 126 S.Ct. 2266. In this case, the testimony was used to prove that the defendant was armed.
One must ponder if there was an ongoing emergency, what was it? The obvious argument is that the victim was afraid for his wife at home as his wallet and keys were stolen. If that were the case, then why didn’t the 911 operator ask the declar-ant for his home phone number so that the declarant’s wife could be notified that there was an emergency? More importantly, if there was an emergency, why didn’t the 911 operator get the declarant’s address (since the declarant stated that the perpetrators had his wallet and keys) in order to send a police car to safeguard the declarant’s family?
I see no difference from this case or any other garden variety purse snatch, where an assailant takes a victim’s personal information and keys. If these circumstances always constitute an ongoing emergency, then the majority’s position eviscerates Crawford, Davis & Ham/mon, and a gaggle of nationwide state and federal cases. However, I do not believe it is within a state intermediate appellate court’s purview to ignore precedent.
If the Florida Supreme Court does not step in to clarify whether an armed robbery, strong arm robbery, or a purse snatch constitutes an ongoing emergency, then we are sadly headed towards jurisprudential entropy.
RAMIREZ, C.J., and SUAREZ, J., concur.

. But for Judge Shepherd’s dissent, this case would have passed into jurisprudential wasteland. That wasteland is the amalgam of P.C.A.'s that are piled up and indistinguishable from one another, so much so, that a P.C.A. renders a case meaningless to all but the parties and advocates who argued the case.
To that end, Judge Shepherd’s dissent brought this P.C.A. to life. Judge Shepherd's dissent brought enough context and meaning to me, that I felt compelled to write yet another dissent on denial of rehearing en banc. This dissent, at least, let's Henry Marshall know that others listen to his plight. These others feel that the importance, predictability, and purity of law are noble goals for judges and justices.