MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2015 ME 67
Docket:       Ken-14-269
Argued:       April 9, 2015
Decided:      May 19, 2015

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

STATE OF MAINE

v.

RICHARD J. KIMBALL

ALEXANDER, J.

[¶1]  In this appeal we address, again, issues that arise when a victim of domestic violence claims lack of memory of critical events or otherwise becomes unavailable or unwilling to testify against the accused.  The State, to maintain the prosecution in such cases, often must rely on alternatives to first-person testimony to bring the victim's statements before the jury.  The challenges for trial courts addressing such evidence have been enhanced in recent years by opinions of the United States Supreme Court, beginning with *Crawford v. Washington*, 541 U.S. 36 (2004), that have significantly developed the standard of admissibility, under the Confrontation Clause, of out-of-court statements made by persons who do not testify at trial.  This appeal focuses on how the trial court addressed out-of-court statements by a reluctant victim to permit the statements to come before the jury.

[¶2]  Richard J. Kimball appeals from a judgment of conviction for domestic violence assault (Class D), 17-A M.R.S. § 207-A(1)(A) (2014), entered by the Superior Court (Kennebec County, *Marden, J.*) following a jury trial.  Kimball argues that his right to confront witnesses against him pursuant to the United States and Maine Constitutions, *see* U.S. Const. amend. VI; Me. Const. art. I, § 6, was violated when the victim was unwilling to testify and the court admitted hearsay statements by the victim in the form of (1) an emergency 9-1-1 recording and (2) the victim's statements to an emergency medical technician paramedic ("EMT").  Kimball contends that the victim's statements were testimonial in nature and barred by the *Crawford* opinion and its progeny, even though the statements at issue may have traditionally qualified for admission as exceptions to the hearsay rule.  Concluding that the victim's prior out-of-court statements were properly admitted at trial, we affirm the judgment.

## I.  CASE HISTORY

[¶3]  The relevant facts, viewed in the light most favorable to the jury's verdict, are as follows. *See State v. Medeiros*, 2010 ME 47, ¶ 16, 997 A.2d 95.  On September 15, 2013, at 6:56 p.m., the victim called 9-1-1, stating that she had been attacked by her husband, Kimball, at a home in Oakland.  The victim sounded as if she was in distress, and the dispatcher requested that the victim "take a deep breath . . . so [the dispatcher could] understand where [she was located]."  The victim

reported to the dispatcher that Kimball had beaten her "to a bloody pulp." She told the dispatcher that she had locked Kimball outside, and that he was outside the house. She stated that she "just want[ed] somebody to look at [her] house so he doesn't come back . . . ." The call lasted approximately two minutes.

[¶4] Officers from the Oakland Police Department arrived at the victim's residence approximately four minutes after she placed the 9-1-1 call. The police found Kimball sitting on the back steps of the residence, barefoot and smoking a cigarette. Kimball appeared intoxicated, and the knuckles of his index and middle finger on his right hand were observed to be red and swollen.

[¶5] Kimball stated to the police that the victim was inside the house "going crazy and . . . beating herself up." He stated that he had asked the victim for cash to go to the store, that he and the victim had argued, and that he had "gotten mad at [the victim] and punched the wall." He told the police that he had left the residence to take a walk. The back door by the stairs where Kimball was sitting was locked.

[¶6] The police made visual contact with the victim, who motioned to one officer from inside the home and let the officer enter through the front door of the residence. The officer described the victim's demeanor as "in hysterics," "crying very loud," "hard to understand," "very worked up," and "very scared." The officer saw that the victim's injuries included a severely bruised eye that was

4

swollen to the point of closing, redness around her throat, bruising around her jaw, and "ping pong ball sized protrusions" on the back of her head. A photograph was taken of the victim's injuries.

[¶7] A captain of the Oakland Fire Department was dispatched to the residence in his capacity as an EMT paramedic to treat the victim's injuries. The EMT noticed redness around the victim's neck and could feel "a couple bumps" on the back of her head. The victim told the EMT that "she was grabbed in the head and was slammed into the floor multiple times."

[¶8] Kimball was charged with one count of domestic violence assault (Class D), 17-A M.R.S. § 207-A(1)(A). He entered a plea of not guilty and requested a jury trial,[1] which was held on May 28, 2014. The victim, although under subpoena, did not appear the morning of the trial. She was eventually brought before the court under arrest to testify. Beyond acknowledging her name, the victim remained silent and would not answer questions asked by the State. The court ultimately issued a contempt order as a result of the victim's refusal to testify and jailed her for twenty-four hours.

---

[1] As a result of adoption of the Maine Rules of Unified Criminal Procedure, jury trial requests in misdemeanor cases are no longer required. Defendants in misdemeanor and felony cases are entitled to a jury trial unless the right to a trial by jury is waived. *See* M.R.U. Crim. P. 18(e), 23(a). This practice applies in many counties presently, and will apply statewide on July 1, 2015. *See* M.R.U. Crim. P. 1(e).

[¶9]  During the trial, the court admitted in evidence the content of the 9-1-1 call, over Kimball's objection on Confrontation Clause grounds.  The court also allowed the EMT to testify as to his observations of the victim.  On redirect examination, after defense counsel had asked if bumps on the victim's head could have other causes, the EMT was permitted to testify that, when he was treating the victim's injuries, the victim stated that "she was grabbed in the head and was slammed into the floor multiple times."

[¶10]  Kimball was found guilty of domestic violence assault and was sentenced to nine months in the Kennebec County jail, with all but forty-four days suspended.  Kimball also was required to complete two years of probation following the sentence, including special conditions that he participate in domestic violence court and complete sixteen sessions of a Certified Batterer's Intervention program before being permitted to have contact with the victim.  Kimball filed this timely appeal pursuant to 15 M.R.S. § 2115 (2014) and M.R. App. P. 2.

## II.  LEGAL ANALYSIS

[¶11]  This appeal presents an issue that is not uncommon in prosecutions related to domestic violence, in which some victims refuse to testify, claim lack of memory of traumatic events, become difficult to contact, recant allegations, or

6

express a desire not to "press" charges.[2]   Many factors may drive a victim's

decision to distance herself or himself from these cases, including fear of

retribution by a partner, fear of intimidation or physical confrontation by the

perpetrator or associates, shame or concerns regarding reputation, a desire to

remain in the relationship, or a concern about untrue statements in his or her initial

report.   The presence of children or the victim's financial dependence on the

defendant may further complicate these dynamics.[3]

---

[2]  Examples from our prior opinions demonstrate the pervasiveness of this issue.  *See, e.g.*, *State v. Ahmed*, 2006 ME 133, ¶¶ 3-4, 8, 15, 909 A.2d 1011 (affirming a conviction supported by police testimony regarding statements and observations of the victim when the victim testified that she no longer wanted the matter prosecuted); *State v. Benner*, 654 A.2d 435, 437 (Me. 1995) (holding that circumstantial evidence was sufficient to support a conviction despite the victim's attempt to recant her complaint that the defendant struck her); *State v. Whitten*, 667 A.2d 849, 850-51 (Me. 1995) (affirming a gross sexual assault conviction when the victim's physician testified, *see* M.R. Evid. 803(4), that on the evening of the assault, the victim had reported that she "had been beaten up and forcibly raped," but at trial, the victim testified that although she had been in an abusive relationship with her boyfriend, "she could not remember whether she was compelled" to engage in sexual intercourse); *State v. Discher*, 597 A.2d 1336, 1338-39, 1342 (Me. 1991) (affirming a manslaughter conviction in connection with the death of a baby, when the baby's mother testified she did not remember the defendant telling her that he had shaken the child, despite a recording made shortly after the event, in which the mother had reported that the defendant stated that "he couldn't stand the crying" and that he "shook the baby 10 or 20 seconds at the most," a recording that was held to be improperly admitted pursuant to M.R. Evid. 803(5), but was considered harmless error in light of other evidence of the defendant's admissions to shaking the baby); *see also State v. Barnies*, 680 A.2d 449, 450-53 & n.1 (Me. 1996) (vacating an assault conviction when the victim refused to testify, despite her previous statements to the police that the defendant "had put a lit cigarette to her eye and kicked her shin," when the police officer was the sole witness, and the victim's statement was ruled by this Court not admissible pursuant to the excited utterance exception, M.R. Evid. 803(2)).

Significant research has been conducted on the issue of so-called "victimless" prosecutions in domestic violence cases, revealing that these cases tend to be less the exception than the rule.  *See* Deborah Tuerkheimer, *Crawford's Triangle: Domestic Violence and the Right of Confrontation*, 85 N.C. L. Rev. 1, 10-18 (2006); *see also* Tom Lininger, *Prosecuting Batterers After Crawford*, 91 Va. L. Rev. 747, 768 (2005) ("Recent evidence suggests that 80 to 85 percent of battered women will recant at some point.").

[3]  For further discussion of this issue, see generally Deborah Weissman, *Crawford v. Washington: Implications for Public Health Policy and Practice in a Domestic Violence Context*, 121 Public Health

[¶12]  Because of the challenges associated with obtaining victim testimony at trial, out-of-court statements by victims can be crucial evidence, either substantively or for impeachment purposes, in domestic violence cases. Well-established hearsay exceptions have been applied to allow admission of a victim's previous statements, including statements made while under the stress of excitement caused by a startling event, M.R. Evid. 803(2), present sense impressions, M.R. Evid. 803(1), or statements made for medical diagnosis or treatment, M.R. Evid. 803(4).  *See State v. Ahmed*, 2006 ME 133, ¶¶ 1, 12-15, 909 A.2d 1011 (affirming a conviction of domestic violence assault when the victim's statements to a police officer were admitted as excited utterances and the content of a 9-1-1 call was admitted for impeachment purposes); *State v. Whitten*, 667 A.2d 849, 850-51 (Me. 1995).

[¶13]  Although the United States Supreme Court's opinions in *Crawford*, 541 U.S. 36, and *Davis v. Washington*, 547 U.S. 813 (2006), have somewhat narrowed the admissibility of such evidence when a defendant's right of confrontation is implicated, the trial court's rulings in this case did not exceed the bounds set by the Supreme Court's jurisprudence.

---

Reports 464-67 (2006), and Laurie S. Kohn, *The Justice System and Domestic Violence: Engaging the Case but Divorcing the Victim*, 32 N.Y.U. Rev. L. & Soc. Change 191 (2008).

[¶14]   With those general observations, we turn to the specific issues presented in this appeal.  A trial court's evidentiary rulings are reviewed for clear error or an abuse of discretion.  *State v. Reese*, 2005 ME 87, ¶ 9, 877 A.2d 1090. A court's legal conclusions that certain statements are nontestimonial, and therefore admissible over Confrontation Clause objections, are reviewed de novo. *State v. Mercier*, 2014 ME 28, ¶ 9, 87 A.3d 700; *State v. Metzger*, 2010 ME 67, ¶ 13, 999 A.2d 947.

[¶15]   The Confrontation Clauses of the United States and Maine Constitutions guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him [or her]."  U.S. Const. amend. VI; *see also* Me. Const. art. I, § 6.  The federal constitutional guarantee is applied to the states through the Fourteenth Amendment.  *See* U.S. Const. amend. XIV, § 1; *State v. Johnson*, 2014 ME 83, ¶ 8 n.2, 95 A.3d 61.  The reach of this guarantee is limited to "testimonial" evidence, which the Supreme Court has described as "typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact."  *Crawford*, 541 U.S. at 51.

[¶16]   In the context of police response to reported emergencies, the Supreme Court has observed that testimonial statements are those that are given "when the circumstances objectively indicate that there is no . . . ongoing emergency, and that the primary purpose of the interrogation is to establish or

prove past events potentially relevant to later criminal prosecution." *Davis*, 547 U.S. at 822. By contrast, statements are nontestimonial, and potentially admissible without violating the Confrontation Clause, when they are "made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Id.*

[¶17] "Confrontation Clause analysis under *Crawford* and *Davis* requires that a court make two inquiries: (1) whether the proffered evidence is hearsay, and (2) if it is hearsay, whether the evidence is testimonial." *State v. Tayman*, 2008 ME 177, ¶ 12, 960 A.2d 1151. Evidence that is properly admitted under an exception to the hearsay rule may nevertheless be barred by the Confrontation Clauses. *Metzger*, 2010 ME 67, ¶ 8, 999 A.2d 947.[4]

[¶18] Because the victim did not testify at trial and consequently the defendant did not have an opportunity to cross-examine her about her statements, we must examine whether the victim's statements that were admitted in evidence—those from the 9-1-1 recording and those made to the EMT—were

---

[4] Kimball objected to admission of the statements on Confrontation Clause grounds. He did not object at trial to the admission of the statements on hearsay grounds, and effectively waived the evidentiary issues by not pursuing them in his appellate brief. Accordingly, our review of the hearsay component is limited to whether the court's admission of the statements constituted obvious error. *See Ahmed*, 2006 ME 133, ¶ 13, 909 A.2d 1011. "An error is obvious if it worked a substantial injustice or affected the defendant's substantial rights." *Id.*

testimonial in nature. This question is "necessarily a fact-specific inquiry," and the State bears the burden to demonstrate that "the statement at issue was elicited primarily for the purpose of resolving an ongoing emergency, not to establish or prove past events." *Metzger*, 2010 ME 67, ¶ 22, 999 A.2d 947.

A.    Victim's 9-1-1 Recording Statements

[¶19]   Although the trial court did not specify the hearsay exception it applied to admit the 9-1-1 recording, the record amply supports a conclusion that the victim's statements on the recording were admissible as excited utterances. "Pursuant to M.R. Evid. 803(2), an excited utterance is (1) a statement relating to a startling event or condition; (2) made while the declarant was under the stress of excitement; (3) caused by the event or condition." *Ahmed*, 2006 ME 133, ¶ 14, 909 A.2d 1011; *see also State v. Robinson*, 2001 ME 83, ¶ 12, 773 A.2d 445 (listing factors for a court to consider in admitting a statement as an excited utterance, including "the nature of the startling or stressful event" and "the amount of time that passed between the startling event and the statement"). The declarant need not be unavailable for this exception to apply.[5]

---

[5]   The restyled Maine Rules of Evidence now in effect contain slightly adjusted language for the excited utterance exception. *See* M.R. Evid. 803(2) (restyled Rules); Introductory Advisory Committee Note to the restyled Maine Rules of Evidence (stating that the restyled Rules are not intended to change the meaning of the superseded rules).

[¶20]  Here, the victim's statements on the 9-1-1 recording related directly to a recent traumatic event.  Although the record does not indicate precisely how much time passed between the incident and the 9-1-1 call, one can infer that the call was made shortly after the victim had locked the defendant out of the house. The court had evidence that the victim remained under the stress of the event when she placed the call, and when police arrived on the scene, they found that the victim was still "in hysterics."

[¶21]  We have affirmed assault convictions reliant on excited utterance evidence, M.R. Evid. 803(2), when the victim's statements to police occurred seven minutes after a 9-1-1 call, *see Ahmed*, 2006 ME 133, ¶ 15, 909 A.2d 1011, and "three to twelve minutes" after an attack while the victim remained very upset, *see Robinson*, 2001 ME 83, ¶ 14, 773 A.2d 445; *see also State v. McLaughlin*, 642 A.2d 173, 175 (Me. 1994) (upholding the trial court's admission of a statement made ten minutes after an assault).  It was not error for the court to admit statements in the 9-1-1 call as substantive evidence to support the conviction.

[¶22]  Kimball contends that, regardless of its admissibility pursuant to the Rules of Evidence, the contents of the 9-1-1 recording are testimonial and inadmissible under the Confrontation Clauses because, at the time of the call, the victim was locked inside her residence and isolated from immediate danger. Although he did not testify, Kimball asserts to us that he had walked away from

the residence, and the victim merely wanted someone to "look at her house" to keep Kimball from returning. We have applied four criteria, derived from the *Davis* opinion, to distinguish between testimonial and nontestimonial statements in this context. Statements made to law enforcement personnel during a 9-1-1 call are nontestimonial when:

> (1) the caller is speaking about events as they are actually happening; (2) it would be clear to a reasonable listener that the victim is facing an ongoing emergency; (3) the nature of the questions asked and answered are objectively necessary and elicited for the purpose of resolving the present emergency; and (4) the victim's demeanor on the phone and circumstances at the time of the call evidence an ongoing emergency.

*State v. Rickett*, 2009 ME 22, ¶ 12, 967 A.2d 671 (citing *Davis*, 547 U.S. at 827).

[¶23] We have observed that "[a]n interrogation that initially serves to determine the need for emergency assistance may evolve into an interrogation solely directed at ascertaining the facts of a past crime." *Rickett*, 2009 ME 22, ¶ 13, 967 A.2d 671. There exists no bright-line rule demarcating when or where this transition takes place. The Supreme Court has stated, however, that "at least the initial interrogation conducted in connection with a 911 call[] is ordinarily not designed primarily to establish or prove some past fact, but to describe current circumstances requiring police assistance." *Davis*, 547 U.S. at 827.

[¶24] In *Rickett*, we considered the admissibility of three separate 9-1-1 calls, holding that the victim's first call and part of her third call were

nontestimonial and admissible because they were made while the victim "was outside her home[,] her assailant was still inside, and she lacked the ability to leave to go to a place that would be safe for her." 2009 ME 22, ¶ 14, 967 A.2d 671. At the point when Rickett left the residence and ended the immediate danger to the victim, the call became testimonial, and we held that the trial court did not abuse its discretion in ordering that the latter portion of the call be redacted. *Id.* Importantly, the questions asked by the dispatcher in *Rickett* "were of the type that would allow the officers who were called to investigate to assess the situation, the threat to their own safety, and the possible danger to [the victim]." *Id.*

[¶25]  An "ongoing emergency" is by its nature broader than the attack itself; it includes the victim's untreated injuries, the ongoing stress of the event, and the possibility that the assailant is still at large and could attack the victim again. *See Metzger*, 2010 ME 67, ¶¶ 17, 19, 999 A.2d 947.  Contrary to Kimball's contentions, a victim need not make a 9-1-1 call during a physical assault in order to be "speaking about events as they are actually happening" pursuant to the first factor of the *Davis* test. *Rickett*, 2009 ME 22, ¶ 12, 967 A.2d 671 (citing *Davis*, 547 U.S. at 827).  The victim's belief that she remains in danger can render a 9-1-1 call statement part of an ongoing emergency.  The victim's emergency is "not limited to the victim's medical condition," but may also include situations "where

the officer has been unable to identify the suspect and satisfy himself that no one is in further danger." *Metzger*, 2010 ME 67, ¶ 19, 999 A.2d 947.

[¶26]  The record evidence in this case, viewed objectively, indicates that the victim was facing an ongoing emergency when she placed the 9-1-1 call, and that she sought assistance for her injuries and protection from further harm by Kimball, who remained at large.  Her emergency had not ended at this point, as indicated by her distressed demeanor and her description of her injuries.  Further, the "questions asked and answered" during the 9-1-1 call were limited to questions about the victim's injuries and whether Kimball was still outside or could be found at the residence—questions aimed at sending police assistance to aid in an ongoing emergency, rather than collecting evidence.  *See Rickett*, 2009 ME 22, ¶ 14, 967 A.2d 671.  Thus, the court's admission of the 9-1-1 recording into evidence was proper and not violative of Kimball's constitutional right to confrontation.

B.    Victim's Statements to EMT

[¶27]  Pursuant to M.R. Evid. 803(4), hearsay statements are admissible if they are "made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably

pertinent to diagnosis or treatment."[6] For statements to be "reasonably pertinent to diagnosis or treatment," reasonableness in the mind of the doctor or medical personnel, not the declarant, is required. Field & Murray, *Maine Evidence* § 803.4 at 479 (6th ed. 2007). It may be necessary for medical personnel to ask a victim about the source of the victim's injuries when the victim is "interested in accurately relating . . . symptoms and the cause for them in order to receive the appropriate treatment." *State v. Cookson*, 2003 ME 136, ¶ 26, 837 A.2d 101 (holding that a murder victim's prior statement to a nurse practitioner regarding her relationship with the defendant was admissible as a statement made for purposes of medical diagnosis or treatment). "[T]he fact that an examination proves helpful to a party's case does not detract from its medical nature." *Ames v. Ames*, 2003 ME 60, ¶ 16, 822 A.2d 1201. Accordingly, the victim's statement to the EMT that "she was grabbed in the head and was slammed into the floor multiple times" was admissible, as it related directly to the "cause or external source" of her head injury in a manner "reasonably pertinent to diagnosis or treatment." M.R. Evid. 803(4).

---

[6] The restyled Maine Rules of Evidence now in effect split the medical diagnosis or treatment exception into two factors. *See* M.R. Evid. 803(4)(A)-(B) (restyled Rules); Introductory Advisory Committee Note to the restyled Maine Rules of Evidence (stating that the restyled Rules are not intended to change the meaning of the superseded rules).

16

[¶28] Kimball argues that the victim's statement to the EMT is testimonial because it was made after the police had secured the victim's residence and subsequent to police questioning. That argument appears to confuse excited utterance issues with issues pertaining to statements made for medical diagnosis or treatment. Statements made to medical personnel that fit within the hearsay exception need not be made while an emergency is ongoing. Such statements are, by their definition, not made "for the purpose of establishing or proving some fact" to be used at a later trial, but rather must be for the immediate purposes of—and reasonably pertinent to—diagnosis or treatment. *Crawford*, 541 U.S. at 51; *see* M.R. Evid. 803(4).[7]

[¶29] Although ensuring reliability of evidence is no longer the sole inquiry in Confrontation Clause analysis, *see Crawford*, 541 U.S. at 61-68, statements admitted pursuant to Rule 803(4) bear unique indicia of reliability that help such evidence to meet this "ultimate goal" of the right of confrontation, *see id.* at 62;

---

[7] Although the Supreme Court has not spoken directly to the potential for overlap between the hearsay exception for medical treatment and diagnosis, M.R. Evid. 803(4), and the Confrontation Clause, it has noted that medical reports created for treatment purposes "would not be testimonial" under its holding in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 312 n.2 (2009) (holding that affidavits reporting the results of forensic analysis were testimonial in nature).

Several other states have recently declined to extend the confrontation right to exclude such testimony. *See, e.g., State v. Muttart*, 875 N.E.2d 944, 957 (Ohio 2007) ("Statements made to medical personnel for purposes of diagnosis or treatment . . . are not even remotely related to the evils that the Confrontation Clause was designed to avoid."); *State v. Miller*, 264 P.3d 461, 488 (Kan. 2011) (stating that "inquiries made for the sole purpose of medical treatment, or even for a dual purpose that includes treatment, may produce nontestimonial statements, depending on other circumstances"); *State v. Cannon*, 254 S.W.3d 287, 303-04 (Tenn. 2008).

*Cookson*, 2003 ME 136, ¶ 26, 837 A.2d 101 ("The rationale behind [Rule 803(4)] is the patient's strong motivation to be truthful.").

[¶30]  Additionally, based on the specific facts of this case, there is no indication that the EMT was interrogating the victim for the purpose of gathering evidence.  Although the EMT was employed by the local fire department, he assisted the victim in his capacity as an EMT paramedic.  The objective scope of his questioning was for diagnosis and treatment of the victim's untreated injuries.

The entry is:

> Judgment affirmed.

---

**On the briefs:**

> Darrick X. Banda, Esq., Law Offices of Ronald W. Bourget, Augusta, for appellant Richard J. Kimball

> Maeghan Maloney, District Attorney, and Tyler LeClair, Stud. Atty., Kennebec County District Attorney's Office, Augusta, for appellee State of Maine

**At oral argument:**

> Darrick X. Banda, Esq., for appellant Richard J. Kimball

> Tyler LeClair, Stud. Atty., for appellee State of Maine

Kennebec County Superior Court docket number CR-2013-1061