GROSS, J.
The admission of an eyewitness’s discovery deposition as substantive evidence at trial compels reversal of this case because it violated the Confrontation Clause of the Sixth Amendment to the United States Constitution.
Originally charged with five felonies, the defendant was acquitted of three and convicted of two lesser included offenses, burglary of a dwelling and third degree grand theft.

The State’s Case

One morning in 2011, the victim awoke to find that a fire had erupted in his home. In a panic, the victim woke up a guest staying with him and the two rushed out to safety. With the house engulfed in flames, the victim ran back inside to salvage what he could. He emerged carrying a gun bag containing three rifles and a fire safe protecting over $61,000 in cash.
The victim tossed the gun bag and safe into his yard, close to where the defendant and a neighbor were standing. The defendant twice tried to retrieve the items, purportedly with the intention to help, but the victim insisted that his neighbor, whom he had known for two years, take the items for safekeeping. Following the victim’s *869 instructions, the neighbor placed the items in the laundry room of his house.
The fire continued to burn and more chaos ensued — ammunition stored in the victim’s house began exploding like fireworks. At about this time, the neighbor watched the defendant, without the victim’s permission, drive the victim’s Mercedes to a separate location. The neighbor and his wife then got into their own car and drove to a nearby cul-de-sac, where they waited for about 25 to 80 minutes until the area near the victim’s home was made safe.
When the neighbor returned home, he discovered that the gun bag and fire safe were missing from the laundry room. After the neighbor reported the burglary, the police found that a back window in the room was out of position, suggesting the burglar’s point of entry. The police were not able to pull any fingerprints or develop DNA evidence linking the defendant to the neighbor’s house.

The Testimony of Ruby White

To pin culpability on the defendant, the State relied upon the observations of witnesses who said they saw the defendant acting suspiciously. A key witness was Ruby White, another neighbor, who saw an African-American male matching the defendant’s description pick up two bags and run towards a gate while the fire at the victim’s house raged.
At trial, the State called White as a witness, but presenting her testimony proved impossible. White’s uncontrollable chattering and her inability to discern where she was or what she was doing prevented her from intelligently answering the State’s questions. After the State’s failed attempts to extract her testimony, defense counsel requested that the trial judge strike the prosecutor’s leading questions and White’s answers and instruct the jury to disregard entirely White’s testimony. The trial judge granted the motion to strike and found White to be “unavailable.”
The State then requested permission to offer White’s previous discovery deposition as substantive evidence. Defense counsel objected on the ground that to allow such testimony would violate the defendant’s right to confront the witnesses against him. Nevertheless, based on his prior determination of White’s “unavailability,” the trial judge permitted the prosecutors to read the discovery deposition to the jurors.
In her deposition, White stated that on the day of the fire, she had just gone outside to watch the fire when she saw an African-American male pick up two bags and run towards the gate of the community. Although she did not originally think much of it, White spoke to the neighbor about the man she had seen running with the bags. After the neighbor informed police of White’s observation, she was presented with a photo lineup, from which she identified the defendant as the person she had seen.
To bolster White’s testimony, the State presented Jorge Esquivel, who testified that on the day of the incident, when he was close to White, he also saw the defendant, with no shoes on and dressed in all black, run to the front of the community carrying a bag in each hand. Esquivel clarified that he was able to see only the profile of the defendant’s face, and that White had a far better “vantage point.” Esquivel was able to identify the defendant in a photo lineup due to his facial hair.

Deputy Johnsorir-Stinnett

Deputy Johnson-Stinnett was working road patrol and responded to the victim’s house after hearing reports of the fire. Because of the potential danger of exploding bullets, the deputy parked her patrol car outside the immediate area of the fire *870 to preclude persons from entering. While stationed there, she observed the defendant, dressed in all black, staring at her. She got out of her patrol car and asked the defendant what he was doing in the area and where he was going. The defendant responded he was just coming from his friend’s house and was heading home. In identifying the location of his home, the defendant pointed to a distinct location; however, his house was actually located in a different part of the development.
Later that day, Deputy Johnson-Stin-nett performed a secondary search of the area with her bloodhound. During this search, she observed the defendant’s home and saw him wearing clothes different from the black clothes he had worn earlier.
On cross-examination, the defense focused on the first time the deputy observed the defendant. The deputy stated that she was certain that the person she saw at the road block was the defendant, a contention she supported after speaking with “other deputies who ... kn[ew the defendant’s] family from other dealings.” Defense counsel immediately moved to strike the latter statement and to declare a mistrial. The trial court sustained the objection and instructed the jury to “[disregard that last answer.”
Without defense counsel asking another question, the deputy then spontaneously stated, “I was told on scene the name of him. That’s how I know it’s his name.” Defense counsel again objected and moved to strike the testimony as hearsay, but the trial court overruled the objection.

The Defense’s Case

As its only witness, the defense presented the defendant’s 16-year-old sister. She testified that she was with the defendant in their house when they both heard the ammunition from the victim’s house exploding. The defendant told his sister to call the police and went outside to see what was going on and to help. Shortly thereafter, police officers surrounded their house to assist the victim with the fire. During this time, the sister saw the defendant move the victim’s car to a safe location before returning to their house and cooking breakfast. Notably, she said police officers searched their house and the defendant’s car, but the stolen items were never recovered.

Confrontation Clause

The introduction of Ruby White’s discovery deposition as substantive evidence violated the Confrontation Clause because the defense did not have a sufficient opportunity for cross examination.
“The Confrontation Clause of the Sixth Amendment provides that ‘[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.’ ” State v. Belvin, 986 So.2d 516, 520 (Fla.2008) (quoting U.S. Const, amend. VI). Florida courts have explained that the Confrontation Clause seeks
(1) to impress the witness of the seriousness of the matter and to protect against a lie by the possible imposition of the penalties associated with perjury; (2) to allow the witness to be subject to cross examination; and (8) to allow the jury to have the opportunity to observe the demeanor of the witness as an aid to assessing credibility.
Rogers v. State, 40 So.3d 888, 890 (Fla. 5th DCA 2010) (citing Harrell v. State, 709 So.2d 1864, 1368 (Fla.1998)). Thus, to effectuate its purpose, the clause categorically bars the “ ‘admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.’ ” Davis v. Washington, 547 U.S. 813, 821, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) *871 (quoting Crawford v. Washington, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)).
“While the Court in Crawford did not include an explicit definition of ‘testimonial’ in its decision,” Corona v. State, 64 So.3d 1232, 1239 (Fla.2011), the Court has held that formal “affidavits, depositions, prior testimony, and confessions” are the very “sort of extrajudicial statements ... that the Confrontation Clause was originally understood to reach.” Williams v. Illinois, — U.S. -, -, 132 S.Ct. 2221, 2228, 183 L.Ed.2d 89 (2012). As testimonial statements, our Supreme Court has determined that the introduction of discovery depositions as substantive evidence at criminal trials violates the Confrontation Clause, since such a deposition’s “purpose ... is at odds with the concept of meaningful cross-examination.” State v. Contreras, 979 So.2d 896, 910 (Fla.2008); see also State v. Lopez, 974 So.2d 340, 349 (Fla.2008) (finding discovery depositions do not provide a sufficient opportunity for cross examination since they are primarily “taken for the purpose of uncovering other evidence or revealing other witnesses,” not questioning credibility); Corona, 64 So.3d at 1241 (discussing how a pretrial deposition did not afford a defendant an adequate opportunity to cross-examine a witness). Rather, where, as here, there is a legitimate concern that the witness will not be able to testify at trial, the proper procedural vehicle is to request a deposition to perpetuate testimony pursuant to Florida Rule of Criminal Procedure 3.190(i). Such a request places opposing counsel on notice of the deposition’s potential use at trial.
The State contends that the admission of White’s deposition was harmless error. See Blanton v. State, 978 So.2d 149, 156 (Fla.2008) (“ ‘[Violations of the Confrontation Clause, if preserved for appellate review, are subject to harmless error review ....’”) (quoting United States v. McClain, 377 F.3d 219, 222 (2d Cir. 2004)). “[U]nder the harmless error test, the State must ‘prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.’” Symonette v. State, 100 So.3d 180, 184 (Fla. 4th DCA 2012) (quoting State v. DiGuilio, 491 So.2d 1129, 1138 (Fla.1986)). It “requires an examination of the entire record by the appellate court including a close examination of the permissible evidence on which the jury could have legitimately relied, and in addition an even closer examination of the impermissible evidence which might have possibly influenced the jury verdict.” DiGuilio, 491 So.2d at 1135. Only where “it can be said beyond a reasonable doubt that the verdict could not have been affected” will such error be deemed harmless. Ciccarelli v. State, 531 So.2d 129, 132 (Fla.1988).
In this case, we cannot say beyond a reasonable doubt that the verdict could not have been affected by the admission of White’s discovery deposition. White was not only a dominant fixture of the State’s case-in-chief, but she was also the witness with the best vantage point to see the defendant in possession of the stolen items. Without other physical evidence linking the defendant to the burglary, White’s testimony was significant proof of the defendant’s guilt; the State referenced her testimony twelve times during closing argument. The error was not cleansed by defense counsel’s plea during closing argument for the jury to disregard White’s testimony due to her incompetence, as counsel’s statement did not preclude the jury from considering all of the evidence presented.
*872 As to other issues raised on appeal, we agree with the defendant that on retrial Deputy Johnson-Stinnett should be precluded from testifying (1) that she knew of the defendant’s name because she “was told on scene the name of him,” and (2) that the “other deputies that were there [knew the defendant’s] family from other dealings.” The former statement is hearsay and the latter is inadmissible at trial because the implication that a defendant or his family has been involved “in other crimes is considered presumptively prejudicial” due to “ ‘the danger that a jury will take the bad character or propensity to crime thus demonstrated as evidence of guilt of the crime charged.’ ” Ford v. State, 702 So.2d 279, 280 (Fla. 4th DCA 1997) (quoting Straight v. State, 397 So.2d 903, 908 (Fla.1981)).

Reversed and remanded for a new trial.

CIKLIN and FORST, JJ., concur.