MAINE SUPREME JUDICIAL COURT                      Reporter of Decisions
Decision:      2014 ME 28
Docket:        Som-13-24
Argued:        January 14, 2014
Decided:       February 25, 2014

Panel:         SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

STATE OF MAINE

v.

JAY S. MERCIER

GORMAN, J.

[¶1]  Jay S. Mercier challenges the court's (*Nivison J.*) 2012 entry of a judgment of conviction for a murder, 17-A M.R.S. § 201(1)(A) (2013), that occurred in 1980.  Mercier argues that his right to confront witnesses was violated by the court's admission of medical examiner testimony based in part on an autopsy report created by a different medical examiner who did not testify at trial. Mercier also contends that the court erred in admitting certain evidence at trial and in failing to fashion a sua sponte remedy for statements made by the prosecutor in closing argument.  We affirm the judgment.

I.  BACKGROUND

[¶2]  Viewing the evidence in the light most favorable to the State, the following facts were established beyond a reasonable doubt at trial.  *See State v. Cook*, 2010 ME 85, ¶¶ 2, 7, 2 A.3d 333.  On the morning of July 5, 1980, the body

of twenty-year-old Rita St. Peter was discovered on Campground Road in Anson. The condition of St. Peter's body immediately indicated that her death was caused by physical injury, and the medical examiner was called to the scene by the first responding law enforcement officers. Local and state police officers investigated St. Peter's death as a homicide throughout 1980, but St. Peter's murder remained unsolved. In 2005, Maine State Police Detective Bryant Jacques and Maine State Police Crime Lab forensic analyst Alicia Wilcox began their investigation of this "cold case."

[¶3] When DNA was extracted in 2009 from sperm cells found in biological evidence taken in 1980 from the victim's body, Jacques established contact with Mercier—who had been a suspect in 1980—through a series of casual conversations at Mercier's home. In January of 2010, after one of these conversations, Jacques collected a cigarette butt that Mercier had discarded on the side of the road. The DNA obtained from Mercier's cigarette butt matched that found on the victim's body. Tire impressions taken from the scene in 1980 also were consistent with the unusual tires Mercier had on his vehicle at the time.

[¶4] On September 16, 2011, Mercier was charged by indictment with the intentional or knowing murder, 17-A M.R.S. § 201(1)(A), or depraved indifference murder, 17-A M.R.S. § 201(1)(B) (2013), of Rita St. Peter. Mercier pleaded not

guilty. The court denied Mercier's motions to suppress evidence obtained from a search of his vehicle and to suppress statements he made to police.

[¶5] Mercier later moved in limine to exclude from trial the testimony of Dr. Margaret Greenwald, the State's chief medical examiner. Dr. Greenwald had not performed the autopsy on the victim or drafted the autopsy report. Mercier argued that to allow Dr. Greenwald to testify about the victim's injuries or express her opinion about the victim's cause of death would violate his right to confront the medical examiner who had completed the autopsy and authored the autopsy report. After a hearing, the court concluded that the Confrontation Clause did not prohibit Dr. Greenwald from testifying, even if that testimony was based, in part, on facts gleaned from the autopsy report. The court did order, however, that Dr. Greenwald was "foreclosed from disclosing any of the details of the factual findings in the autopsy report."

[¶6] The court conducted a six-day jury trial beginning on September 20, 2012, during which Dr. Greenwald testified. The State did not seek to introduce the autopsy report itself. After deliberating for less than two hours, the jury returned a verdict finding Mercier guilty of intentional or knowing murder. The

4

court entered a judgment on the verdict and sentenced Mercier to seventy years in prison. Mercier appeals.[1]

## II. DISCUSSION

[¶7] The Confrontation Clause guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. It is applied to the states through the Fourteenth Amendment. *State v. Ducasse,* 2010 ME 117, ¶ 9, 8 A.3d 1252. The United States Supreme Court has interpreted the Confrontation Clause to provide that testimonial evidence by a declarant who is not testifying may be admitted at trial only if the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. *Crawford v. Washington,* 541 U.S. 36, 59 (2004). The Court declined to define all of the aspects of "testimonial" evidence, but did note that it is "typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact," and would at least apply to "prior testimony at a preliminary hearing, before a grand jury, or at a former trial[,] and to police interrogations." *Id.* at 51-53, 68 (alteration omitted) (quotation marks omitted). Thus, the Supreme Court held, the admission of the defendant's wife's recorded statement to police, taken during an investigation into alleged criminal

___

[1] Mercier does not challenge the denial of his motion for a new trial or the sufficiency of the evidence supporting his conviction, but we note that the record contains evidence on which a reasonable fact-finder could find that the State proved each element of murder beyond a reasonable doubt. *See* 17-A M.R.S. § 201(1)(A) (2013). Further, Mercier has abandoned the sentence review application he earlier submitted. *See* 15 M.R.S. § 2151 (2013); M.R. App. P. 20.

acts committed by her husband, violated the Confrontation Clause where there was no indication that the defendant had had any opportunity to cross-examine her. *Id*. at 40, 68-69.

[¶8]   In *Melendez-Diaz v. Massachusetts*, the Supreme Court refined its application of the Confrontation Clause to written documents.   557 U.S. 305, 309-29 (2009).   It held that, for purposes of the Confrontation Clause, a sworn certificate stating that illegal drugs comprised the contents of plastic bags seized by police during a criminal drug investigation was admissible only if the declarant who created those documents also testified.   *Id*. at 308, 311.   The Court concluded that such a document was testimonial in nature given that it was "incontrovertibly a solemn declaration or affirmation made for the purpose of establishing or proving some fact," and that not only was the document "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," but also, pursuant to state law, its "*sole purpose* . . . was to provide prima facie evidence of the composition, quality, and the net weight of the analyzed substance." *Id*. at 310-311 (quotation marks omitted).

[¶9]   On Confrontation Clause grounds, Mercier challenges the court's admission of Dr. Greenwald's testimony opining as to St. Peter's injuries and cause of death.   He contends that because, in forming those opinions, Dr. Greenwald relied in part on an autopsy report written by another medical

examiner, and because the authoring medical examiner was not a witness at the trial, Mercier's right to confront the author of the autopsy report was violated. We review de novo the impact of the admission of testimony on the constitutional right to confront witnesses. *State v. Mitchell*, 2010 ME 73, ¶¶ 40-41, 4 A.3d 478.

[¶10] We squarely addressed this issue just four years ago in *Mitchell*, in which the medical examiner who had performed the victim's autopsy had retired and moved to another country by the time of trial. *Id*. ¶ 18. At trial, a different medical examiner testified that she had reviewed the autopsy report and related materials, and then gave her own opinion as to the cause of death. *Id*. ¶ 20. We sanctioned this process, holding that the admission of a medical examiner's testimony as to injuries and cause of death, even when that testimony was based in part on an autopsy completed and an autopsy report written by a different medical examiner, did not violate the Confrontation Clause. *Id*. ¶¶ 20, 47. In doing so, we noted that the matter was distinguishable from those in which the admissibility of the autopsy report itself was at issue because the State had instead offered the expert testimony of a live witness who was available for cross-examination. *Id*. ¶ 47.

[¶11] Mercier argues, however, that our decision in *Mitchell* is compromised by the United States Supreme Court's decision in *Bullcoming v. New Mexico*, 131 S. Ct. 2705 (2011). In *Bullcoming*, the Supreme Court evaluated the

admission of a lab analyst's certificate stating the defendant's blood alcohol level when the analyst who performed the test did not appear at trial but another analyst from the same lab did appear and testify as to the contents of the certificate. *Id.* at 2709-12. Consistent with its holdings in *Crawford* and *Melendez-Diaz*, the Court held that such evidence was testimonial, and that its admission therefore violated the Confrontation Clause unless it was established that the certifying analyst was unavailable and the defendant otherwise had an opportunity to cross-examine him. *Id*. at 2710.

[¶12]  The decision in *Bullcoming* gives us no reason to reconsider our holding in *Mitchell*. In *Bullcoming*, as in *Melendez-Diaz*, the government sought the admission of a document purporting to show the results of various lab tests without introducing the testimony of the person who performed those tests, and without establishing the declarant's unavailability for trial or the defendant's prior opportunity to cross-examine the declarant. *Bullcoming*, 131 S. Ct. at 2710-12; *Melendez-Diaz*, 557 U.S. at 308-09, 311. In *Mitchell*, in contrast, only the admissibility of a witness's live testimony was at issue; the medical examiner testified as to her own evaluation of the matter and the defendant was free to cross-examine her about the basis for that evaluation. 2010 ME 73, ¶ 47, 4 A.3d 478.

[¶13]  The Supreme Court's decision in *Williams v. Illinois*, 132 S. Ct. 2221 (2012), decided after *Bullcoming*, also aligns with our analysis in *Mitchell*.  In *Williams*, the prosecution's expert witness testified at trial that she obtained from an outside laboratory a DNA profile—which other evidence established came from a sample taken off of the victim's body—that she then matched to the defendant's DNA profile.  *Id*. at 2227.  The Supreme Court held that the expert's testimony was admissible because she was not purporting to testify that the sample analyzed by the outside lab had in fact come from the victim, but was instead merely testifying that the DNA profile obtained from the lab matched that of the defendant.  *Id*. at 2228, 2236-41.  The Court reasoned that an expert witness may testify as to her own opinion and the facts on which that opinion is based "without testifying to the truth of those facts."  *Id*. at 2228; *accord* M.R. Evid. 703.

[¶14]  In sum, our reasoning in *Mitchell*, bolstered by the Supreme Court's decision in *Williams*, holds true—the admission of the testimony of a medical examiner who relies in part on information obtained as a result of an autopsy or contained in an autopsy report completed by a non-testifying medical examiner is not a violation of the Confrontation Clause.

[¶15]  We decline to disturb Mercier's conviction on Confrontation Clause grounds, and we conclude that Mercier's remaining contentions also are not persuasive.

The entry is:

Judgment affirmed.

_____

**On the briefs:**

Hunter J. Tzovarras, Esq., Bangor, for appellant Jay S. Mercier

Janet T. Mills, Attorney General, Lara M. Nomani, Asst. Atty. Gen., Office of Attorney General, Augusta, for appellee State of Maine

**At oral argument:**

Hunter J. Tzovarras, Esq., for appellant Jay S. Mercier

Lara M. Nomani, Asst. Atty. Gen., for appellee State of Maine

Somerset County Superior Court docket number CR-2011-318
FOR CLERKS REFERENCE ONLY