MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2015 ME 23
Docket:       And-14-182; And-14-185
Argued:       February 11, 2015
Decided:      March 10, 2015

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

STATE OF MAINE

v.

RODA O. ABDI

*****

STATE OF MAINE

v.

ALI-NASSIR H. AHMED

ALEXANDER, J.

[¶1]   The Section 8 housing program is a collaborative federal and state program through which local public housing agencies provide federally-supported subsidies directly to landlords who rent to low-income tenants who have been prequalified by the local public housing agencies.[1]   The program is designed to

---

[1]  *See Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 12 (1993); *Dussault v. RRE Coach Lantern Holdings, LLC*, 2014 ME 8, ¶ 2, 86 A.3d 52.

2

make quality housing available in the private rental market to individuals classified as having no income or very low income.[2]

[¶2]   Between 2002 and 2008, Roda O. Abdi and Ali-Nassir H. Ahmed, claiming to have no income or very low income, applied for, were found qualified for, and lived in Section 8 housing, for which the local housing authority paid a substantial rent subsidy to the landlord.   During this time period, Section 8 eligibility forms that were signed or acknowledged by Abdi and/or Ahmed indicated that the rental subsidy paid for their apartment was at least $750 per month, and often much more.

[¶3]   Throughout this time, Abdi and Ahmed owned, managed, or were employed by the A&R Halal Market and earned income far in excess of the maximum that would qualify them for Section 8 housing assistance.   *See* 24 C.F.R. §§ 982.201(a)-(b) (2014).   In addition, while living in their subsidized apartment, Abdi and Ahmed acquired two properties and paid off mortgages totaling $266,000 on those properties.   As a result of one of these real estate purchases, Ahmed became a Section 8 housing landlord and received Section 8 housing assistance payments for qualifying tenants in the property.

---

[2]   *See* 24 C.F.R. § 982.201(a)-(b) (2014) (stating Section 8 family income eligibility requirements); 24 C.F.R. § 5.603(b) (2014) (defining family income levels).

[¶4] Ultimately, Abdi and Ahmed's deception was discovered. They are now before us on appeal from their convictions of theft by deception (Class B), 17-A M.R.S. § 354(1)(B)(1) (2014), entered in the Superior Court (Androscoggin County, *Clifford, J.*) following a joint, jury-waived trial.

[¶5] In this consolidated appeal, Abdi and Ahmed argue that the court erred in admitting in evidence as business records,[3] pursuant to M.R. Evid. 803(6), certain forms on which they had provided financial information. These forms were prepared by a property management company for use by the United States Department of Housing and Urban Development (HUD) and state authorities to determine the defendants' eligibility for Section 8 housing assistance. Abdi and Ahmed contend that (1) these forms did not qualify under the business-records exception to the hearsay rule, and (2) admission of the forms violated their rights of confrontation pursuant to the United States and Maine Constitutions. We discern no error or abuse of discretion by the trial court, and we affirm the judgments.

## I. CASE HISTORY

[¶6] Viewing the facts in the light most favorable to the State as the prevailing party, the court rationally could have found the following facts proved

---

[3] The restyled Maine Rules of Evidence, effective January 1, 2015, contain adjusted language with regard to this hearsay exception, without changing its meaning, including that the exception is now named "Records of regularly conducted activity." *See* M.R. Evid. 803(6) (restyled rules).

4

beyond a reasonable doubt. *See State v. Medeiros*, 2010 ME 47, ¶ 2, 997 A.2d 95. Between 2002 and 2008, Abdi and Ahmed benefitted from the Section 8 housing assistance program while living in a subsidized apartment building located on Bartlett Street in Lewiston. A property management company, North Country Real Estate Management Associates (NC/REMA), was responsible for creating, maintaining, and transmitting the relevant housing records to the state and local authorities overseeing the HUD program. At various points in time, the Lewiston Housing Authority, Maine State Housing Authority, and Paulhus & Associates, a third-party contractor hired by the agencies, each assisted in administration of the housing assistance program by transferring payments to landlords. NC/REMA conducted prequalifying, annual, and interim interviews of tenants to screen them for housing assistance eligibility, collected the tenants' rent contributions, and handled any eviction proceedings. The landlord of the Bartlett Street property was St. Laurent Housing Associates.

[¶7] Abdi owned and operated the A&R Halal Market, a convenience store located near the subsidized apartment building. The market generated substantial annual gross deposits—ranging from $405,954 to $843,864—between 2004 and 2008. Abdi had acknowledged and told others that her annual income as the market's owner was between $100,000 and $150,000. In addition, in 2004 and 2008, Abdi and Ahmed purchased two pieces of real estate through two different

limited liability companies, paying off sizeable mortgages within months. As already noted, as a result of one of these real estate purchases, Ahmed became a Section 8 landlord and received housing assistance payments on behalf of his tenants. The substantial funds that Abdi and Ahmed withdrew from the market's business account and other sums used to pay off the mortgages far exceeded the income limits for them to qualify as a family eligible for Section 8 housing subsidies.

[¶8] In applying for Section 8 assistance through the NC/REMA eligibility screening process, Abdi and Ahmed provided NC/REMA with information regarding their family income and assets, indicating that they owned no assets or real estate, that Ahmed earned no income, that Abdi had a minimal annual income, and that Abdi was only a part-time employee of the market rather than an owner. NC/REMA summarized this information using HUD form 50059, titled "owner's certification of compliance with HUD's tenant eligibility and rent procedures." The 50059 paperwork also included an additional form entitled "certification of zero income," which was signed under penalty of perjury by both Abdi and Ahmed in 2002, and by Ahmed alone from 2004 through 2006. These forms, which provided a financial snapshot for Abdi and Ahmed for each year, were submitted by NC/REMA to the authority overseeing subsidy payments. The local authority, in turn, used Abdi and Ahmed's reported income and the amount of the

6

government-imposed contract rent to determine the subsidy amount to be paid by HUD to the landlord.

[¶9]  The record demonstrates that the information provided by Abdi and Ahmed was intentionally false.  They continued to apply annually, signing documents supporting their applications, thus creating and reinforcing the impression that they had little or no income or assets and were qualified for Section 8 housing assistance.  As a result of these applications, Abdi and Ahmed received Section 8 benefits in the form of a subsidized apartment that was initially rent free and later cost them a low monthly fee.  Their housing subsidies, paid to the landlord, totaled over $58,000 from 2003 through 2008.  The subsidies between 2006 and 2008 far exceeded the $10,000 amount that makes theft by deception a Class B crime.  *See* 17-A M.R.S. § 354(1)(B)(1).

[¶10]  In July 2012, Abdi and Ahmed were each charged by indictment with theft by deception (Class B), 17-A M.R.S. § 354(1)(B)(1), of housing assistance benefits.[4]  Each pleaded not guilty and waived his or her right to a jury trial.

---

[4]  Title 17-A M.R.S. § 354(1)-(2) (2014) provides, in relevant part:

**1.**  A person is guilty of theft if:

**A.**  The person obtains or exercises control over property of another as a result of deception and with intent to deprive the other person of the property.  Violation of this paragraph is a Class E crime; or

**B.**  The person violates paragraph A and:

[¶11]  The two cases were tried together in a bench trial in December 2013, during which the court admitted, over hearsay objections by Abdi and Ahmed, nine of the 50059 forms dated from 2002 to 2008.[5]  The State's primary witness was Tina Pelletier, President of NC/REMA and a "certified occupancy specialist." Pelletier testified as to how the property management company screened tenants, created and maintained the 50059 forms, and used income and asset information to calculate the subsidy and the tenant's share of rent.

[¶12]  Pelletier testified, and the State's exhibits demonstrated, that she personally conducted the re-certification interviews with Abdi and Ahmed and completed the 50059 forms in 2006 and 2007.  Pelletier further testified that in years when other certified occupancy specialists completed the forms, she nonetheless personally reviewed and transmitted the information on the 50059

---

> **(1)** The value of the property is more than $10,000. Violation of this subparagraph is a Class B crime;
>
>     . . . .

**2.**  For purposes of this section, deception occurs when a person intentionally:

> **A.** Creates or reinforces an impression that is false and that the person does not believe to be true, including false impressions as to identity, law, value, knowledge, opinion, intention or other state of mind; except that an intention not to perform a promise, or knowledge that a promise will not be performed, may not be inferred from the fact alone that the promise was not performed.

[5]  The indictment period was from July 11, 2006, to May 31, 2008, due to the six-year statute of limitations for a Class B crime.  *See* 17-A M.R.S. § 8(2)(A) (2014).  However, the court considered evidence dating back to 2002, concluding that it was relevant to the state of mind of the defendants and to show a pattern or course of conduct.  *See* M.R. Evid. 404(b); *State v. Olmo*, 2014 ME 138, ¶ 15, 106 A.3d 396.

8

forms to the administering agencies and managed the subsidy payments account on behalf of the landlord.

[¶13] The court also heard testimony from Kevin Fletcher, the realtor who sold the two properties to Abdi and Ahmed in 2004 and 2008. He testified that Abdi and Ahmed were able to pay off their two mortgages, of $120,000 and $146,000, within nineteen and fifteen months, respectively.

[¶14] The court found Abdi and Ahmed guilty as charged in the indictments.[6] In its opinion, the court stated that it had admitted the 50059 forms as business records pursuant to M.R. Evid. 803(6), finding, based in part on the testimony provided by Pelletier, that the "form was standard to and essential in the business of Section 8 housing assistance and it was used in the regular course of business by NC/REMA."

[¶15] Ahmed was sentenced to four years in prison with all but nine months suspended and three years' probation. Abdi was sentenced to four years in prison with all but ten months suspended and three years' probation. The court also imposed joint and several liability for restitution in the amount of $46,493. Abdi and Ahmed each filed a timely appeal, and their appeals have been consolidated by order of this Court.

---

[6] Abdi was also charged with attempted theft by deception (Class D), 17-A M.R.S. §§ 152(1), 354(1)(B)(4) (2014), of funds from the Women, Infants, and Children (WIC) Supplemental Nutrition Program. The court entered a verdict of not guilty on that charge.

## II.  LEGAL ANALYSIS

A.    M.R. Evid. 803(6): Business Records Exception

[¶16]  When admission of evidence is challenged, we review a trial court's foundational findings to support admissibility for clear error and its ultimate determination of admissibility for an abuse of discretion.  *See State v. Gurney*, 2012 ME 14, ¶ 36, 36 A.3d 893.  Pursuant to M.R. Evid. 803(6), records kept in the ordinary course of a regularly conducted activity or business[7] are admissible as an exception to the hearsay rule if the proponent lays the proper foundation.  A proper foundation requires a custodian or qualified witness's testimony to establish that

> (1) the record was made at or near the time of the events reflected in the record by, or from information transmitted by, a person with personal knowledge of the events recorded therein;

> (2) the record was kept in the course of a regularly conducted business;

> (3) it was the regular practice of the business to make records of the type involved; and

> (4) no lack of trustworthiness is indicated from the source of information from which the record was made or the method or circumstances under which the record was prepared.

---

[7] The term "business" is broadly defined in the Rules of Evidence that were applied here to include any "business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."  M.R. Evid. 803(6).  The restyled Maine Rules of Evidence, effective January 1, 2015, are similarly broad, now referencing "regularly conducted activity" rather than "regularly conducted business."  *See* M.R. Evid. 803(6) (restyled rules).

*HSBC Mortg. Servs., Inc., v. Murphy*, 2011 ME 59, ¶ 10, 19 A.3d 815.

[¶17]   A custodian or other qualified witness is one "who was intimately involved in the daily operation of the business and whose testimony show[s] the firsthand nature of his or her knowledge." *Bank of America, N.A. v. Greenleaf*, 2014 ME 89, ¶ 25, 96 A.3d 700.   The fact that the witness did not prepare or supervise the preparation of the record does not preclude the witness from providing the foundation for admissibility.   *Bank of America, N.A. v. Barr*, 2010 ME 124, ¶ 19, 9 A.3d 816; *see also State v. Hager*, 691 A.2d 1191, 1193-94 (Me. 1996) (holding that a credit union's administrative assistant was qualified to support the introduction of copies of a defendant's credit card receipts).

[¶18]   Abdi and Ahmed have challenged both Pelletier's qualifications as a custodian or qualified witness and the State's establishment of the requisite foundational requirements.   Although Pelletier did not personally generate the 50059 forms created from 2002 to 2005, she testified in great detail as to her level of training and her involvement in record-keeping and oversight as President of NC/REMA.   There was competent evidence in the record for the court to find that Pelletier possessed personal knowledge of each of the forms and that she was "intimately involved in" the business of processing the forms, either by completing the forms herself or acting in a supervisory capacity overseeing the creation and execution of the forms by housing assistance applicants.   *Greenleaf*, 2014 ME 89,

¶ 25, 96 A.3d 700; *see Murphy*, 2011 ME 59, ¶ 10, 19 A.3d 815; *Barr*, 2010 ME 124, ¶ 19, 9 A.3d 816.

[¶19] Through Pelletier's testimony, the State presented competent evidence to support the foundational elements necessary for the admission of the business records. *See Murphy*, 2011 ME 59, ¶ 10, 19 A.3d 815. Pelletier described how the forms were kept in the ordinary course of NC/REMA's business, including the procedure that the specialists followed in interviewing tenants and recording their incomes and assets, the manner in which records were maintained and transmitted to the relevant authorities, and the regularity of the screening and interview process. Unlike other recent cases implicating the business records exception, particularly in the foreclosure context, where the entity that created the record has dissolved or merged into another entity, this case involves the same entity at all times and a custodian witness who oversaw creation and maintenance of all relevant records.[8] *See, e.g.*, *Greenleaf*, 2014 ME 89, ¶¶ 3 n.3, 17, 26, 96 A.3d 700.

---

[8] Abdi and Ahmed also argue that the rent subsidy information included in the 50059 forms did not come from the personal knowledge of Pelletier but rather from HUD, and thus constituted hearsay within hearsay. *See* M.R. Evid. 805. This argument fails. There is ample evidence in the record demonstrating that NC/REMA created and maintained the information on the forms throughout the certification process, albeit using formulas provided by HUD. Additionally, the court allowed Pelletier to testify as to the HUD information because she was familiar with the federal housing assistance process as a whole and understood how HUD calculated and made payments to the landlord based on proposals by NC/REMA. Pelletier also testified that she managed the subsidy payments account on behalf of the landlord and knew which subsidy payments were attributable to each individual tenant. Thus, even if the 50059 forms included a subsidy calculation based on a HUD formula, that aspect did not affect admissibility because the information both originated with NC/REMA and was of the sort that Pelletier could testify was recorded in the course of regular business by NC/REMA.

[¶20]   Abdi and Ahmed have identified certain purported errors in the preparation of the 50059 forms, including inconsistent signatures or a lack of signatures on certain forms and indications that the specialists may not have fully explained to Abdi and Ahmed what they were signing.   However, there is no requirement in Rule 803(6) that business records be perfect in form in order to be trustworthy and admissible.  *Cf. State v. Therriault*, 485 A.2d 986, 996 (Me. 1984) (stating that a finding of lack of trustworthiness is often "predicated on a finding that the record was altered . . . or that the preparer had some motivation to misrepresent or misstate results").  Further, the issue of the reliability of the forms is distinct from the determination of their admissibility.  It was the province of the court as the fact-finder to consider any minor errors in weighing the credibility of the evidence, and the court did not err or abuse its discretion by finding that the errors did not affect admissibility.  *See State v. Cruthirds*, 2014 ME 86, ¶ 16, 96 A.3d 80.

[¶21]   Although there was no error in the trial court's admission of the 50059 forms pursuant to the business records exception, M.R. Evid. 803(6), we note that the court could have admitted the documents on another basis, one that neither party suggested to the trial court.  The signatures of Abdi and Ahmed on the forms rendered the forms admissible as nonhearsay admissions of a party-opponent, representing either their own statements or statements through

which they "manifested an adoption or belief" in the truth of the information reported on the forms. *See* M.R. Evid. 801(d)(2).[9] Pelletier, who was familiar with the signatures of Abdi and Ahmed from having previously conducted interviews and completed the forms for their applications, provided sufficient authentication during the course of her testimony to demonstrate that the signatures belonged to Abdi and Ahmed. *See* M.R. Evid. 901; *see also State v. Jones*, 405 A.2d 149, 151 (Me. 1979) ("Any statement by a defendant in a criminal case which, in conjunction with proof of other facts and circumstances, tends to prove guilt is an admission.").

[¶22] We also note that, regardless of how the forms are characterized as an evidentiary matter, proof of Abdi and Ahmed's signatures was not required for the court to find that they were guilty of theft by deception. Abdi and Ahmed were not charged with perjury or false swearing, either of which would have required the State to prove that they had made false statements under oath or affirmation. *See* 17-A M.R.S. §§ 451-452 (2014). In this case, Abdi and Ahmed applied for subsidized housing through NC/REMA and provided financial information that qualified them for assistance, while actually earning income significantly greater than would qualify them to receive assistance. They continued to occupy a

---

[9] The restyled Maine Rules of Evidence similarly require that the statement be "one the [opposing] party manifested that it adopted or believed to be true." M.R. Evid. 801(d)(2)(B) (restyled rules).

subsidized apartment each year through 2008, which, as the trial court correctly observed, "would not have happened had the HUD subsidies not been paid." Taken together, there was sufficient corroborative evidence beyond the signatures for the court to find that Abdi and Ahmed committed theft by deception.

B.      Confrontation Clause

[¶23]  Abdi and Ahmed also argue that, because they were not given the opportunity to cross-examine the preparers of the 50059 forms created in 2002 to 2005, admission of the forms in evidence was in violation of their rights pursuant to the Confrontation Clauses of the United States and Maine Constitutions.  The Confrontation Clauses provide that those who are criminally prosecuted enjoy the right to be confronted with the witnesses against them.  U.S. Const. amend. VI; Me. Const. art. I, § 6.  "We review de novo the impact of the admission of testimony on the constitutional right to confront witnesses."  *State v. Mercier*, 2014 ME 28, ¶ 9, 87 A.3d 700.

[¶24]  Although the 50059 forms in this case may have been integral to the State's evidence against Abdi and Ahmed, they do not fall within the ambit of the Confrontation Clauses for several reasons.  As an initial matter, a defendant's confrontation right is not offended by the admission of evidence through an exception to the hearsay rule unless that evidence is "testimonial."  *Crawford v. Washington*, 541 U.S. 36, 51-53 (2004).  "Testimonial" evidence is "typically [a]

solemn declaration or affirmation made for the purpose of establishing or proving some fact," *id.* at 51, and includes statements taken "when the circumstances objectively indicate that there is no . . . ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution," *Davis v. Washington*, 547 U.S 813, 822 (2006).

[¶25]  Evidence created for an independent business purpose, even if it later becomes relevant at a trial, is distinct from testimonial evidence.  The Supreme Court's opinion in *Melendez-Diaz v. Massachusetts* informs us that business records are "generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial."  557 U.S. 305, 324 (2009). We have followed similar reasoning, noting that M.R. Evid. 803(6), "by its terms, does not predicate the admission of a business record on the ability of the opposing party to cross-examine the preparer of the record."  *Therriault*, 485 A.2d at 996. Rather, it "applies to all cases where the admissibility of a business record is at issue, regardless of whether the declarant is available."  *Id*.

[¶26]  The 50059 forms are not testimonial because they were created to determine Abdi and Ahmed's eligibility for federal housing assistance, rather than for use at trial.  Thus, the forms are outside the scope of the Confrontation Clause,

and we need not engage in the constitutional "harmless error" analysis suggested by Abdi and Ahmed. *See State v. Dolloff*, 2012 ME 130, ¶¶ 33-34, 58 A.3d 1032.

The entry is:

Judgment affirmed.

---

**On the briefs:**

Peter E. Rodway, Esq., Rodway & Horodyski, P.A., Portland, for appellant Ali-Nassir H. Ahmed

Bruce M. Merrill, Esq., Law Offices of Bruce M. Merrill, P.A., Portland, for appellant Roda O. Abdi

Janet T. Mills, Attorney General, and Leanne Robbin, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee State of Maine

**At oral argument:**

Peter E. Rodway, Esq., for appellant Ali-Nassir H. Ahmed

Bruce M. Merrill, Esq., for appellant Roda O. Abdi

Leanne Robbin, Asst. Atty. Gen., for appellee State of Maine