MAINE SUPREME JUDICIAL COURT                                  Reporter of Decisions
Decision:     2024 ME 45
Docket:       Pen-23-357
Argued:       April 11, 2024
Decided:      June 6, 2024

Panel:        STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

## STATE OF MAINE

v.

## CORYDON JUDKINS

HORTON, J.

[¶1]  Corydon Judkins appeals from a judgment entered by the trial court (Penobscot County, *Mallonee, J.*) convicting him of domestic violence assault (Class C), 17-A M.R.S. § 207-A(1)(B)(1) (2024), after a jury trial.  Judkins's principal argument on appeal is that his constitutional right to confront witnesses was violated by the court's admission of police body camera footage of statements made by the alleged victim, who did not testify at trial.  The State concedes that the statements were testimonial and should not have been admitted.  Because we agree and cannot conclude that the error was harmless, we vacate the judgment.[1]

---

[1]  Judkins also argues that the court erred in denying his attorney's motion to withdraw shortly before his trial.  In light of our mandate, the issue is moot, and we need not decide it.

## I. BACKGROUND

[¶2]  On March 4, 2023, the police were called to the apartment where Judkins and the victim lived, and the victim told the first responding officer that Judkins had assaulted her and inflicted physical injury.  Her statements were recorded by the officer's body camera.

[¶3]  On March 6, 2023, Judkins was charged by complaint with three counts: domestic violence aggravated assault (Class B), 17-A M.R.S. § 208-D(1)(D) (2023);[2] domestic violence criminal threatening (Class C), 17-A M.R.S. § 209-A(1)(B)(1) (2023); and domestic violence assault (Class C), 17-A M.R.S. § 207-A(1)(B)(1).  A grand jury indicted Judkins on May 24, 2023, on the same three charges.  At his arraignment on June 6, 2023, Judkins pleaded not guilty.  The State obtained a superseding indictment on June 28, 2023, for charges of domestic violence aggravated assault (Class B), 17-A M.R.S. § 208-D(1)(D); domestic violence criminal threatening (Class B), 17-A M.R.S. §§ 209-A(1)(B)(1), 1604(5)(B) (2023);[3] domestic violence assault (Class C), 17-A M.R.S. § 207-A(1)(B)(1); and obstructing report of crime or injury

---

[2]  Title 17-A M.R.S. § 208-D has since been amended, though the amendments are not relevant in the present case.  P.L. 2023, ch. 465, § 4 (effective October 25, 2023) (codified at 17-A M.R.S. § 208-D (2024)).

[3] Title 17-A M.R.S. § 1604(5)(B) has since been amended, though the amendments are not relevant in the present case.  P.L. 2023, ch. 316, § 12, ch. 455, § 3 (effective October 25, 2023) (codified at 17-A M.R.S. § 1604(5)(B) (2024)).

(Class D), 17-A M.R.S. § 758(1)(A) (2023). On August 11, 2023, the State dismissed the fourth charge (obstructing report of crime or injury). Judkins pleaded not guilty to the other three charges. On August 23, 2023, the State dismissed the first two charges (domestic violence aggravated assault and criminal threatening).

[¶4] On August 23 and 24, 2023, the court held a jury trial on the remaining charge of domestic violence assault (Class C), 17-A M.R.S. § 207-A(1)(B)(1). The victim did not testify at trial.

[¶5] The State offered in evidence the video and audio obtained from the body camera worn by the first responding police officer. The video depicts an officer removing Judkins from the apartment and then shows the first responding officer asking the victim what happened. It shows the victim answering while visibly upset, breathing heavily, and applying an ice pack to what appears to be an injury. By agreement of the parties, portions of the audio were muted when the body camera footage was played for the jury. However, the court admitted in evidence the audio of the victim's response to the officer's query about what had happened. Judkins objected on the ground that the victim's response was testimonial and that Judkins would not have an opportunity to cross-examine her. The court admitted the audio on the ground

4

that the victim's statements in response to the officer's question came within the excited utterance exception to the hearsay rule. *See* M.R. Evid. 803(2).

[¶6]  In the audio portion that was admitted in evidence and played for the jury, the victim responded to the officer's question by saying:

> [Judkins] thinks I've been having all these affairs and everything, and it's just bullshit.  And last ni—the night before last—he beat me really bad.  This is the second part of it, and this is from the first part,[4] and he won't—he just took my phone because I wanted to call the cops—and he won't let me call the cops, and he said [indistinguishable] knocked on the door, and I'm sorry you had to knock a couple of times because he said not to say anything because he was going to kill me.

[¶7]  The court also admitted in evidence testimony recounting statements the victim made later that day to medical personnel.  The victim went to a hospital the day of the incident and was seen by a triage nurse, a physician's assistant, and a Sexual Assault Forensic Examiner (SAFE) nurse. All three testified about the victim's injuries and her explanation of how they occurred.  The physician's assistant testified that the victim reported that she had been in an altercation with her boyfriend and that the boyfriend placed his knee on her chest, strangled her, and punched her in the face and chest.  The SAFE nurse testified that the victim said that she had been assaulted and that

---

4  At this point, the victim pointed to her chest.

her boyfriend strangled her. The court admitted in evidence redacted medical charts in which the physician's assistant and the SAFE nurse recorded their observations.

[¶8] Judkins testified that he and the victim had known each other for twenty years and that they had been sexual partners. Judkins stated that the victim attacked him first and bit his finger, and he denied that he had inflicted the injuries that the victim described to the police officer and the medical personnel. He testified that she injured herself by falling off a chair.

[¶9] In response to the jury's request during its deliberations, the body camera video, including the same audio of the victim's statements, was again played for the jury.

[¶10] The jury found Judkins guilty of domestic violence assault. Judkins was sentenced to five years' incarceration, with all but four years suspended, and two years of probation. Judkins timely appealed from the resulting judgment of conviction. *See* 15 M.R.S. § 2115 (2024); M.R. App. P. 2B(b)(1).

## II. DISCUSSION

[¶11] The Confrontation Clause of the Sixth Amendment to the United States Constitution guarantees persons charged with crimes the right to

6

confront and cross-examine the witnesses against them.[5] *State v. Abdi*, 2015 ME 23, ¶ 23, 112 A.3d 360; U.S. Const. amend. VI. "We review de novo the impact of the admission of testimony on the constitutional right to confront witnesses." *State v. Mercier*, 2014 ME 28, ¶ 9, 87 A.3d 700.

## A.    Testimonial Evidence for Purposes of the Confrontation Clause

[¶12]   "The Confrontation Clause applies only to statements that are (1) hearsay and (2) testimonial."[6] *State v. Lovell*, 2022 ME 49, ¶ 13, 281 A.3d 651 (quotation marks omitted). "A testimonial statement is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *State v. Beeler*, 2022 ME 47, ¶ 21, 281 A.3d 637 (quotation marks omitted).  "In determining whether an out-of-court statement qualifies as testimonial, courts look at whether the primary purpose of the statement is to establish or prove a fact to be used later in trial." *Id.* ¶ 22 (quotation marks omitted).  If an out-of-court statement is testimonial, it is inadmissible in a trial if the declarant does not testify, unless the declarant "is unavailable and the defendant had a prior opportunity to cross-examine the declarant." *Mercier*,

---

[5]   Judkins does not raise an argument with respect to the equivalent provision of the Maine Constitution.  *See* Me. Const. art. I, § 6.

[6]   "The admission of hearsay evidence against a criminal defendant implicates the Sixth Amendment because the defendant is not afforded the opportunity to confront the out-of-court declarant." *Sixth Amendment at Trial*, 35 Geo. L.J. Ann. Rev. Crim. Proc. 608, 626-28 (2006) (Westlaw) (footnote omitted).

2014 ME 28, ¶ 7, 87 A.3d 700.  However, the Confrontation Clause presents no bar to the admission of a testimonial statement if the declarant is available to be cross-examined at trial or if the statement is admitted for a purpose other than proving that the statement is true.  *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004).   Testimonial evidence can include "prior testimony at a preliminary hearing, before a grand jury, or at a former trial," as well as statements made in response to  police interrogations.  *Mercier*, 2014 ME 28, ¶ 7, 87 A.3d 700 (alteration and quotation marks omitted).

[¶13]  The United States Supreme Court has promulgated a standard for determining whether statements made to police are testimonial:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.  They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis v. Washington*, 547 U.S. 813, 822 (2006); *see also Michigan v. Bryant*, 562 U.S. 344, 374-78 (2011) (concluding that statements made to police when the declarant "was lying in a gas station parking lot bleeding from a mortal gunshot wound" were nontestimonial because their purpose was to assist officers in an ongoing emergency).

[¶14] As we noted in the related context of a caller's statements to a 9-1-1 operator, *see State v. Rickett*, 2009 ME 22, ¶¶ 5, 12, 967 A.2d 671, the Court in *Davis* identified four characteristics that indicate that a particular statement is nontestimonial: (1) it described events as they were actually happening when the statement was made; (2) it was made during an ongoing emergency; (3) the nature of the statement, viewed objectively, indicates that it was made to help police resolve an emergency; and (4) it was made in a threatening or chaotic environment rather than one that was relatively safe and tranquil. *Davis*, 547 U.S. at 827.

[¶15] In *Rickett*, we also pointed out that a police interrogation "that initially serves to determine the need for emergency assistance may evolve into an interrogation solely directed at ascertaining the facts of a past crime." *Rickett*, 2009 ME 22, ¶ 13, 967 A.2d 671 (citing *Davis*, 547 U.S. at 828-29). We said that "[i]n such a circumstance, trial courts 'should redact or exclude the portions of any statement that have become testimonial.'" *Id.* (quoting *Davis*, 547 U.S. at 829).

[¶16] Because whether a statement is testimonial implicates criteria beyond those contained in the hearsay exceptions enumerated in the Maine Rules of Evidence, *see* M.R. Evid. 803, "evidence that would otherwise be

admissible under an exception to the hearsay rule may be barred by the Confrontation Clause." *State v. Metzger*, 2010 ME 67, ¶ 8, 999 A.2d 947; *State v. Gorman*, 2004 ME 90, ¶ 46, 854 A.2d 1164; *see, e.g.*, *United States v. Cameron*, 699 F.3d 621, 642-49 (1st Cir. 2012) (concluding that even if evidence was admissible under the business records exception to the hearsay rule, its admission violated the Confrontation Clause because it was testimonial).  Thus, even if the proffered statement comes within an exception to the hearsay rule, if the declarant does not testify at trial it may be necessary for a court to consider whether the statement should nonetheless be excluded as testimonial. *See State v. Tayman*, 2008 ME 177, ¶ 12, 960 A.2d 1151.

[¶17]  The State forthrightly concedes that the victim's responses to the officer's queries were inadmissible because the victim did not testify at trial. The State acknowledges that, once Judkins was removed from the apartment, there was no "ongoing emergency" that would support the admission of the victim's answers as nontestimonial statements.  Quoting *Davis*, 547 U.S. at 822, the State concedes that at that point "the primary purpose of the [officer's questioning] of [the] victim was 'to establish or prove past events potentially relevant to later criminal prosecution' as opposed to asking questions to aid in the resolution of an ongoing emergency."  Because the victim did not testify at

10

trial and Judkins had no prior opportunity to cross-examine her, the victim's testimonial statements were inadmissible. Thus, the State's concession is appropriate.

[¶18] We therefore turn to the question of whether the error in admitting the statements was harmless.[7] *See* M.R.U. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights shall be disregarded.").

**B.    Harmless Error Review**

[¶19] Our harmless error review varies depending on the nature of the error. "[T]here are two types of trial errors: (1) those that are structural, in which prejudice is presumed, triggering vacatur; and (2) those that are nonstructural, triggering an analysis as to the impact of the error in that specific case." *State v. White*, 2022 ME 54, ¶ 32, 285 A.3d 262. Judkins does not contend that the error was structural, and we agree that it was not.

[¶20] For nonstructural errors, there are two standards for determining whether a trial error is harmless—one applies generally, and the other applies to errors of constitutional magnitude. *State v. Hassapelis*, 620 A.2d 288, 291 n.4

---

[7] Because Judkins does not challenge the admissibility of the victim's statements to medical personnel, we need not and do not decide whether they were testimonial for purposes of the Confrontation Clause or pertinent to medical diagnosis or treatment for purposes of the hearsay exception. *See* M.R. Evid. 803(4); *cf. State v. Kimball*, 2015 ME 67, ¶¶ 27-30, 117 A.3d 585.

(Me. 1993). "A constitutional harmless error analysis differs from a general harmless error analysis. Under a harmless error standard, reversal is required only if the error affects the substantial rights of the defendant. Under a constitutional harmless error standard, reversal is required unless a court is confident beyond a reasonable doubt that the error did not contribute to the guilty verdict." *Bernal v. People*, 44 P.3d 184, 200 n.11 (Colo. 2002) (citation omitted).

[¶21] The less stringent general standard applies to evidentiary errors, incorrect jury instructions, and improper prosecutorial comments that do not violate constitutional rights. *See State v. Guyette*, 2012 ME 9, ¶¶ 18-20, 36 A.3d 916; *State v. Millett*, 273 A.2d 504, 508-11 (Me. 1971); *State v. Ouellette*, 2012 ME 11, ¶¶ 8-23, 37 A.3d 921; *White*, 2022 ME 54, ¶¶ 14-44, 285 A.3d 262; *see, e.g.*, *State v. Nightingale*, 2023 ME 71, ¶¶ 25-28, 304 A.3d 264 (stating that part of the inquiry is whether "it is highly probable that the jury's determination of guilt was unaffected by the prosecutor's comments" (quotation marks omitted)).

[¶22] When a defendant's right to confront witnesses is violated at trial, the more stringent constitutional standard applies. *Warren*, 1998 ME 136, ¶¶ 16-17, 711 A.2d 851 ("[T]he appropriate harmless error inquiry is whether,

after a review of the whole record, we are satisfied beyond a reasonable doubt that the error did not contribute to the verdict obtained"); *see State v. Johnson*, 2009 ME 103, ¶¶ 18-19, 982 A.2d 320.

[¶23]  When an error violates a constitutional right, the harmless error analysis focuses on the importance of the evidence, the prejudicial effect of its admission, and whether there was overwhelming admissible evidence to support the judgment of conviction.  *See State v. Conner*, 434 A.2d 509, 514 (Me. 1981).  We have adopted the factors that the United States Supreme Court expressed in *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986), to consider whether a Confrontation Clause violation is harmless error.  *Huntley*, 681 A.2d at 12.  The factors are the following:

> [T]he importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

475 U.S. 673, 684 (1986); *see Huntley*, 681 A.2d at 12.

[¶24]  Whether the erroneously admitted testimony is highly prejudicial or important to the State's proof is relevant to the harmless error analysis because prejudicial effect and relative importance both bear directly on the potential for the error to influence the verdict.  *See United States v. Anderson*,

881 F.2d 1128, 1131 (D.C. Cir. 1989) ("Because the witness in this case was a key witness against appellant . . . and because the prosecution's case . . . was otherwise weak, we cannot conclude that the district court's denial of cross-examination was . . . harmless beyond a reasonable doubt . . . ."); *Harper v. Kelly*, 916 F.2d 54, 57-58 (2d Cir. 1990) (vacating a conviction because the improperly admitted evidence was key to the prosecution's case).

[¶25]  Conversely, the extent to which properly admitted evidence of guilt is overwhelming is likewise relevant to the harmless error analysis because it may remove any reasonable doubt as to whether the erroneously admitted evidence affected the verdict.  *See Conner*, 434 A.2d at 514; *United States v. Wells*, 347 F.3d 280, 290 (8th Cir. 2003) ("When the evidence of a defendant's guilt is overwhelming, appellate courts have held that violations of the confrontation clause by the admission of hearsay statements are harmless beyond a reasonable doubt." (quotation marks omitted)).

[¶26]  Two indicators that erroneously admitted evidence may have influenced the verdict are that the prosecutor's closing argument emphasizes the evidence and that the jury asks to review the evidence during its deliberations.  *See, e.g.*, *Guyette*, 2012 ME 9, ¶¶ 10-21, 36 A.3d 916; *State v.*

*Caulfield*, 722 N.W.2d 304, 316-17 (Minn. 2006); *Vilseis v. State*, 117 So.3d 867, 871 (Fla. Dist. Ct. App. 2013).

[¶27]   In *State v. Guyette*, for example, we vacated a judgment of conviction for unlawful possession of scheduled drugs due to the erroneous admission of hearsay evidence.  2012 ME 9, ¶¶ 10-21, 36 A.3d 916.  The erroneously admitted statements were the only evidence directly establishing that the defendant was in possession of the drugs.  *Id.* ¶ 19.  In vacating the conviction, we noted that the jury had asked to review the erroneously admitted statements during its deliberations.  *Id.* ¶ 20.

## C.    Harmless Error Applied in this Case

[¶28]   Here, the jury's guilty verdict was supported by admissible evidence from the officer's body camera, the victim's statements to medical personnel, and photographs of her injuries.  However, because the State relied heavily on the victim's statements in the video to prove its case, and because the statements were untested by cross-examination, the evidence of Judkins's guilt cannot be considered overwhelming. *Cf. Conner*, 434 A.2d at 514. We note also that the victim's statements on the admitted portion of the body camera footage contained information beyond the statements that the medical personnel testified she had made to them.  Moreover, we infer that both the

State and the jury considered the victim's statements recorded on the body camera audio to be particularly vital evidence, because the State referred to them more than once during closing arguments, *see Caulfield*, 722 N.W.2d at 317; *Jensen v. Clements*, 800 F.3d 892, 904, 908 (7th Cir. 2015), and during its deliberations, the jury asked to view and hear the body camera footage again, *see Guyette*, 2012 ME 9, ¶¶ 10-21, 36 A.3d 916; *Jensen*, 800 F.3d at 905.

[¶29]  On balance, we are unable to conclude beyond a reasonable doubt that the victim's statements on the body camera recording did not affect the verdict, and we must therefore vacate the judgment.  *See Warren*, 1998 ME 136, ¶¶ 16-17, 711 A.2d 851.

The entry is:

> Judgment vacated.  Remanded for further
> proceedings consistent with this opinion.

---

Michelle R. King, Esq. (orally), Irwin & Morris, Portland, for appellant Corydon Judkins

R. Christopher Almy, District Attorney, Mark A. Rucci, Dep. Dist. Atty., and Joanne T. Lewis, Esq. (orally), Prosecutorial District V, Bangor, for appellee State of Maine